In the Matter of Larry Arnold GERKEN, and Susan Jean Gerken Debtors.

BETHANY TRUST COMPANY, Plaintiff,

v.

Larry Arnold GERKEN, and Susan Jean Gerken, Defendants.

Bankruptcy No. 84–03274–SJ.
Adv. A. Nos. 86–0301–SJ, 86–0302–SJ.

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

Dec. 30, 1986.

Donald E. Bucher, Kansas City, Mo., for plaintiff.

James H. Thompson, Jr., Kansas City, Mo., for defendants.

## FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINTS FOR DECREES OF NONDISCHARGEABILITY BUT DENYING THE DEFENDANT'S DISCHARGES IN BANKRUPTCY

DENNIS J. STEWART, Chief Judge.

The plaintiff seeks decrees of nondischargeability of the defendants' indebtedness to it on the grounds of fraud (§ 523(a)(2) of the Bankruptcy Code) and willful and malicious conversion (§ 523(a)(6)) and also seeks denial of discharge for fraudulent concealment of property within § 727(a)(2) of the Bankruptcy Code. A consolidated trial of the merits was held on December 22, 1986, at which Donald Bucher, Esquire, appeared as counsel for plaintiff and James H. Thompson, Jr., appeared as counsel for defendants.

■ The facts which were demonstrated by the evidence adduced in the hearing were materially as follows. The plaintiff—according to facts which are apparently not disputed—had a valid and perfected security interest in the debtors' livestock. It was, in part, therefore, in reliance upon the debtors' representations as to the number of livestock which they owned that the plaintiff extended credit to the debtors.[1] More specifically, it was in reliance on the debtors' written representations in successive written financial statements that they owned 60 head of cattle that these extensions of credit were made.[2] According to the evidence which has been presented, reliance was only partially on the representation as to ownership of cattle. For, throughout the period of time in issue, the plaintiff also had a security interest in the debtors' real estate, which they accorded a value which would probably cover all the debtors' outstanding indebtedness to them.[3]

Admittedly, however, the debtors' representation that they owned 60 head of cattle was later belied. The loan officer of the plaintiff bank, who had taken this representation from them in the successive financial statements, made two inspection visits to the debtors' farm—one in about April 1985 and the other somewhere around March 1986. On the former, the loan officer, according to the instructions given to him by the debtor Larry Gerken as to which of the cattle belonged to him (unbranded) and which belonged to his mother (branded), found only twenty or so cattle belonging to the debtor. And, in March 1986, when the bank officer repaired to the debtors' farm to repossess the cattle after the date of bankruptcy, only 20 head of cattle were given over to the bank under the debtors' representation that the remainder of the cattle which were in a "loafing barn" and partially visible to the bank officer were, in reality, the cattle which belonged to the mother of the debtor Larry Gerken. The bank officer, Galen Jennings,

---

1. *Partial* reliance is, of course, sufficient to warrant a decree of nondischargeability under § 523(a)(2), if all of the other elements of that species of nondischargeability are proven. But, in these action, for the reasons set out in the further text of this memorandum, the other elements have not been proven.

2. The element of detrimental reliance is satisfactorily proven by the evidence in this case, but, as observed in the text of this memorandum, certain other elements are not.

3. This was according to the testimony of the bank's former loan officer, Galen Jennings.

in his testimony before this court, stated that, at least with respect to some of these cattle, he noticed that they had been branded only very recently. The brands were fresh and had not been grown over to any appreciable extent by the hair covering of the cattle. In Mr. Jennings opinion, the brands could not have been over two or three weeks old.

The evidence before the court further shows that, in February 1984, the debtors and Larry Gerken's mother had a total herd of some 80 head of cattle.[4] According to the number which had been returned in March 1986 to the plaintiff and those which had been otherwise identified as casualty losses or other lawful dispositions,[5] it was the plaintiff's contention at trial that some 21–23 head of cattle were unaccounted for as of March 1986. But the debtors adduced in evidence in the course of trial documentary evidence of the intervening sale of some 30 head of cattle in Lamoni, Iowa.[6]

The testimonial explanation offered by the debtors for their representations in successive financial statements that they owned 60 head of cattle when fully half of those cattle—according to their current contentions—belonged to Larry Gerken's mother was simply that those representations were incorrect because of inattention to detail, a failure to comprehend the importance of the document which they were subscribing, and their memories, which were continually bad. To some degree, their testimonial protestations to this effect are corroborated by the somewhat halting testimony of the bank officer Jennings, who stated that he could not say that the debtors "intentionally" attempted to deceive the bank in this regard.[7] As to the value of the cattle which is involved in the series of claims *sub judice*, the testimony of Ms. Gerken is uncontradicted to the effect that the entire herd of 60 cattle was never at any point in time of a value exceeding $12,000 or $13,000.

*Conclusions of Law*

■■■■ On the basis of the evidence which has provided the foundation for the above and foregoing findings of fact, the plaintiff requests the court (1) to conclude that the debtors' representation of ownership of the 60 head of cattle were either materially false so as to make their indebtedness for the credit extended in reliance thereon nondischargeable under § 523(a)(2) of the Bankruptcy Code or (2), in the alternative, if the debtors really did own the 60 cattle, that they willfully and maliciously converted them so as to make the indebtedness for their value nondischargeable under the provisions of § 523(a)(6) of the Bankruptcy Code. With respect to the first prayer for relief, however, it is incumbent upon the plaintiff in a § 523(a)(2) nondischargeability action to demonstrate by clear and convincing evidence that the material misrepresentation alleged by it was intentionally made. See *Sweet v. Ritter Finance Company*, 263 F.Supp. 540, 543 (W.D.Va.1967); *Matter of Curl*, 49 B.R. 302, 304, n. 6 (Bkrtcy.W.D.Mo.1985). In this action, it would be quite difficult, if not impossible, for the court to make this finding when the bank officer who took the allegedly false statements from the debtors was himself not convinced that any false statement was intentionally made.[8] Similarly, with respect to the allegation of will-

---

**4.** This number was uncontradicted in the evidence at trial, and purports to be established by unquestioned documentary evidence. About 50 were accountable for by prior sales and return to the plaintiff in March 1986. Some 7 others were said to be casualty losses. It was initially contended that some 23, therefore, remained unaccounted for. But another documentary record of sale of some 30 cattle was adduced at trial.

**5.** See note 4, *supra*.

**6.** See note 4, *supra*.

**7.** With respect to the question of their attempting to conceal the collateral of the bank, however, Mr. Jennings' testimony is unequivocal to the effect that the debtors did this intentionally, even going so far as to brand the cattle shortly before they were to be picked up by the bank so as to make them appear to be the property of the mother of Larry Gerken.

**8.** Cf. note 7, *supra*.

ful and malicious conversion, an indispensable element of the cause of action is such evidence as would provide the court with a reasonable basis for assessing damages. It is fundamental that an award of damages cannot be based upon guesswork and speculation.[9] With respect to actions sounding in conversion, the measure of damages is the value of the property converted at the time and place of conversion.[10] Further, when the property converted is the collateral of the plaintiff, the damages cannot exceed the balance due the plaintiff.[11] But, in this action, there is no intelligible evidence of the current balance due the plaintiff. The plaintiff has presented evidence of the loans made to the debtors, but no precise evidence of the balance due. It was admitted, for one thing, that the real property which was the collateral also of the plaintiff was foreclosed, but it was not stated what value was thereby subtracted from the prior balance due.[12] For these reasons, therefore, the court will not grant the plaintiff's complaints for decrees of nondischargeability.

■ Section 727(a)(2) of the Bankruptcy Code, however, makes it the duty of the bankruptcy court to deny the debtors' discharges in bankruptcy when it is shown that they:

"with intent to hinder, delay, or defraud a creditor or an officer of the estate ... ha[ve] ... concealed property of the debtor, within one year before the date of the filing of the petition; or ... property of the estate, after the date of the filing of the petition."

In this regard, the evidence clearly and convincingly shows that the debtors actively concealed livestock from the bank which was its collateral; that the same collateral was, by operation of law, property of the estate after the date of bankruptcy, see, e.g., *In re Kursh*, 9 B.R. 801 (Bkrtcy.W.D. Mo.1981); and that the debtors continued to conceal the property after that date. It was the clear and uncontradicted testimony of Mr. Jennings that, when he went to the Gerken farm in about March 1986, to pick up the bank's collateral, including the livestock, it was represented to him by the debtors that only the unbranded cattle belonged to the bank; that he saw cattle in a nearby shed which had only recently been branded; and that the amount of cattle on hand which was admittedly the property of the debtors was much less than it had been represented by the debtors in their successive financial statements. Further, according to Mr. Jennings' testimony, virtually the same thing happened to him when he made an inspection visit to the debtors' farm in April 1985—the debtors [13] contended that only a few of the cattle were theirs, as contrasted with at least sixty head at the time of the rendering of a financial statement only a short time previously. And this court independently[14] agrees with Mr. Jennings' assessments of the debtors' credibility to the effect that they were more likely telling the truth when they

---

**9.** "An award of damages may not be based upon mere speculation." *Rosebrough Monument Co. v. Memorial Park Cemetery*, 666 F.2d 1130, 1147 (8th Cir.1982).

**10.** See, e.g., *Weldon v. Town Properties, Inc*, 633 S.W.2d 196 (Mo.App.1982).

**11.** It is a fundamental tenet of the law governing damages that the actual damages awarded should not exceed the loss suffered.

**12.** The only evidence in this regard was the oral admission of plaintiff's counsel that the foreclosure had occurred. In view of the testimonial statement otherwise by the witness Jennings to the effect that the real estate's value completely secured the existing debt, the court cannot assume, in the absence of particularized evidence, that any appreciable sum remains due.

**13.** The responsibility of Mrs. Gerken—as well as that of Mr. Gerken—for the proscribed concealment is clearly shown by the evidence. She testified as to her knowledge of the division of ownership of the cattle between the debtors and Larry Gerken's mother and, if she had such knowledge, she also had to have guilty knowledge that not all of the bank's collateral was turned over to it, but rather that it was concealed.

**14.** Wide discretion is to be accorded a bankruptcy court making determinations of credibility on the issue of denial of discharge. "Because the Referee is in a superior position to make the proper determination of any issue of fact, it has been held that he has broad discretion in granting or refusing discharge." *In re Brown*, 314 F.Supp. 947, 954, 955 (W.D.Ark.1970), aff'd 444 F.2d 49 (8th Cir.1971).

represented that they owned 60 cattle than when they later claimed that half of these cattle belonged to Mr. Gerken's mother. To conclude otherwise would be to grant debtors an all-too-facile method of retracting property which serves as creditors' collateral by simply claiming that it had all along belonged to a close relative. Such an unusual method of doing business—especially with the involvement of a close relative—the law itself recognizes as indicia of a fraudulent intent.[15] Such indicia, considered together with the clear evidence of recent branding and repeated, fresh admissions of ownership of twice as many cattle,[16] provide clear and convincing evidence of the debtors' intention to hinder, delay, and defraud creditors.[17] The evidence before the court thus compels a denial of discharge on this basis.[18]

15. See, e.g., *Matter of Perry Adams and Lewis Securities, Inc,* 30 B.R. 845, 848, 849, nn 5, 6 and 9 (Bkrtcy.W.D.Mo.1983), and authorities there cited. See also *Matter of Laughlin,* 7 B.R. 924, 926 (Bkrtcy.W.D.Mo.1981).

16. The debtors repeatedly signed financial statements stating they owned twice as many cattle as they professed to have when they were to yield them up to the plaintiff.

17. See authorities cited in note 15, *supra.*

18. It is always an unwelcome duty for a bankruptcy court to have to deny a discharge. The

court is aware of the hardship that it may work to the debtors, sometimes a hardship of catastrophic proportions. Still, the law is clear to the effect that discharge should be denied in cases such as that at bar. The debtors had it within their power at the opportune moment to turn over to the plaintiff the existing livestock which the evidence shows to have been the collateral of the plaintiff. They elected not to do so and chose instead to attempt to conceal them. They must have believed this choice to be worth the risk of losing their discharge in bankruptcy.