**SPECIALTY MILLS, INC.; Hesco, Inc.;
Bruce Hestad, Appellants,**

v.

**CITIZENS STATE BANK; Dakota
Oat Processors, Inc., Appellees.**

No. 94–2047.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1994.

Decided April 5, 1995.

Jonathan K. Van Patten, Vermillion, SD, argued (Bruce M. Ford on the brief), for appellants.

Lee A. Magnuson, Sioux Falls, SD, argued, for appellees.

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,* District Judge.

SHAW, District Judge.

Specialty Mills, Inc. (Specialty Mills), Hesco, Inc., and Bruce Hestad (collectively referred to as "appellants") appeal the district court's grant of summary judgment in favor of Appellee Citizens State Bank (CSB).[1] *Specialty Mills, Inc. v. Citizens State Bank,* Civ. 93–4146 (D.S.D. Mar. 22, 1994). The district court granted CSB's alternative motion for summary judgment on appellants' state law claims for malicious prosecution, abuse of process, intentional interference with contract, tortious inference with business relationships and intentional infliction of emotional distress. The district court also remanded CSB's counterclaim to state court for further proceedings and dismissed Dakota Oat from the action.[2] We hold that the district court lacked jurisdiction to entertain this action; accordingly, the judgment of the district court is reversed with directions to remand the case to the state court for further proceedings.

## I. BACKGROUND

Specialty Mills is a South Dakota corporation whose principal shareholder is appellant Bruce Hestad. Hestad also owns appellant Hesco, Inc., a South Dakota corporation which brokers specialized grains, including special animal feeds, organic grains, and grains used in distilling alcoholic beverages. Hestad decided to expand his business to include the production of specialized grains. He located a mill owned by Dakota Oat in Arlington, South Dakota, and formed Specialty Mills to produce the grains. The shareholders in Specialty Mills are Hestad, who provided business expertise, Dakota Oat, which contributed mill machinery and equip-

---

* The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. Nominal appellee Dakota Oat Processors, Inc. (Dakota Oat), has not participated in this appeal, and represents that it has no interest or stake in the outcome of this matter.

2. Appellants do not challenge these rulings.

ment, and Illinois Cereal, Inc., which made a capital investment.

As part of its start-up process, Specialty Mills negotiated with Dakota Oat for lease of space in a portion of Dakota Oat's Arlington mill. Specialty Mills informed Dakota Oat that execution of the lease was contingent upon Specialty Mills' obtaining financing for the operation from Norwest Bank. In order to induce Norwest Bank to provide the financing, Specialty Mills had to assure Norwest Bank that the machinery and equipment contributed by Dakota Oat to Specialty Mills were free and clear of existing liens. At the time, the machinery and equipment were subject to a first security interest held by CSB and a second security interest held by the Small Business Administration (SBA).

CSB agreed to disclaim its security interest in the machinery and equipment by letter dated April 24, 1989, possibly because it believed the new operation with Specialty Mills would strengthen Dakota Oat's financial position and thereby decrease CSB's risk. SBA also disclaimed its security interest in the machinery and equipment.

The lease between Specialty Mills and Dakota Oat was executed on May 1, 1989. CSB secured a direct assignment of rent payments due under the lease to Dakota Oat from Specialty Mills in the amount of $12,000.00 per month.

On July 16, 1991, Dakota Oat filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of South Dakota. The case was subsequently converted to a Chapter 7 liquidation. On April 28, 1992, Specialty Mills gave notice to Dakota Oat that it would terminate the lease in 60 days, in accordance with the terms of the lease. Specialty Mills also notified Dakota Oat that it was going to remove its machinery and equipment from the mill.[3]

On June 8, 1992, CSB filed an ex parte motion for notice of automatic stay in the bankruptcy court, alleging that Dakota Oat "may" have an ownership interest in the machinery and equipment which Specialty Mills intended to remove from the leased premises. The bankruptcy court issued a notice of automatic stay directed to Specialty Mills on June 8, 1992. Specialty Mills believed the sole purpose behind CSB's motion was to make it impossible or impractical for Specialty Mills to terminate the lease, because termination would deprive CSB of the monthly rent payments.

Specialty Mills filed a motion for determination of the inapplicability of the stay to the machinery and equipment in possession of Dakota Oats, and an expedited hearing was held on the motion on June 15, 1992. Specialty Mills alleged the machinery and equipment used by it in the leased premises was its personal property and therefore not property of the bankruptcy estate. The bankruptcy court sua sponte raised the issue of the validity of the notice of termination of the lease. The bankruptcy court concluded that the automatic stay was applicable to the lease and the machinery and equipment. Specialty Mills filed a motion for reconsideration and in the alternative for relief from the automatic stay. A second expedited hearing was held on July 9, 1992. The bankruptcy court concluded the lease termination was proper and allowed Specialty Mills to remove the machinery and equipment. The bankruptcy court also imposed a priority lien on the property removed as security for any repairs required to restore the premises to its pre-removal condition and for any amounts owed under the lease. Specialty Mills then removed the machinery and equipment.

CSB later reached a settlement with Dakota Oat in the bankruptcy proceedings. CSB retained its assignment of rents due Dakota Oat under the lease with Specialty Mills and received all of the Specialty Mills stock owned by Dakota Oat and all Dakota Oat accounts receivable.

Appellants filed this action in state court asserting the five state law tort claims relating to CSB's actions in the bankruptcy proceedings. Appellants claimed CSB used the judicial process to raise an argument which it knew was not well grounded in fact, law or

---

3. This was the same machinery and equipment Dakota Oat had contributed as its investment in Specialty Mills.

equity, *i.e.*, Dakota Oat might have an interest in the machinery and equipment, for the improper purpose of frustrating Specialty Mills' efforts to exercise its right to terminate the lease. Appellants alleged CSB's actions were intended to prolong Specialty Mills' obligation to continue paying rent under the lease. Specialty Mills alleged that as a result of CSB's improper use of the judicial process, it was unable to continue processing orders because it had to shut down its operations in Dakota Oat's Arlington mill and was unable to remove the specialized machinery and equipment to another site.

CSB filed its answer and state law counterclaim against Specialty Mills, alleging monies due under the lease assignment and on an account receivable assigned from Dakota Oat. CSB then removed this action directly to the bankruptcy court pursuant to 28 U.S.C. § 1452 as an adversary proceeding. CSB obtained joinder of Dakota Oat as a necessary party defendant under Federal Rule of Bankruptcy Procedure 7019, over appellants' opposition. Appellants moved to transmit the action to the district court pursuant to 28 U.S.C. § 157(d) based on their request for a jury trial. Appellants stated in the motion to transmit that they sought no relief against Dakota Oat. The bankruptcy court granted appellants' motion and transmitted the action to the district court.

CSB filed its motion for judgment on the pleadings or in the alternative for summary judgment. The district court granted summary judgment in favor of CSB on all of appellants' claims, finding as a matter of law that CSB did not improperly invoke the automatic stay and thus did not improperly use the judicial process. The district court explained that the automatic stay reaches property that does not belong to a debtor, but which is in its possession. The district court specifically found no evidence of malice on the part of CSB.

The district court also dismissed Dakota Oat from the action, noting it had not filed an answer or joined in CSB's motion for summary judgment. The district court stated

there were no allegations in Specialty Mills' complaint against Dakota Oat and the record indicated no basis for Dakota Oat's liability except through CSB's actions. This appeal followed.

## II. DISCUSSION

■ Before addressing the merits of an appeal, this court must determine whether it has and whether the district court had jurisdiction of the subject matter. *See Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n*, 893 F.2d 968, 969 (8th Cir.1990). Where a question of jurisdiction exists, we consider the issue on our own motion although the parties do not assert our lack of jurisdiction. *United States ex rel. Shakopee Mdewakanton Sioux Community v. Pan Am. Management Co.*, 789 F.2d 632, 635–36 (8th Cir.1986) (citations omitted).

■ This court's jurisdiction turns on whether the district court had subject matter jurisdiction over the claims brought by appellants in state court against CSB, which were removed to the bankruptcy court.[4] Subject matter jurisdiction of United States District Courts over bankruptcy matters is set forth in 28 U.S.C. § 1334. District courts then refer bankruptcy proceedings to the bankruptcy judges of the district under 28 U.S.C. § 157(a). The district courts and their bankruptcy divisions have exclusive jurisdiction over cases under Title 11, and non-exclusive jurisdiction over proceedings arising in or "related to" a case under Title 11. 28 U.S.C. § 157(a), (b).

■ Civil proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings. *Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir.1993) (*Abramowitz*). Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (*Wood*); *see* 28 U.S.C. § 157(b)(2). Non-core, related proceedings are those which do not invoke a substantive right cre-

4. The fact that the state court action was removed directly to the bankruptcy court rather than the district court did not deprive the bank-
ruptcy court of jurisdiction. *See* 28 U.S.C. § 1452(a); *In re Fulda Indep. Co-op.*, 130 B.R. 967, 975–76 (Bankr.D.Minn.1991).

ated by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy. *Wood,* 825 F.2d at 97. The claims brought by appellants against CSB are non-core, related proceedings. If the district court properly exercised jurisdiction over these claims, it was on the basis that they were related to the Dakota Oat bankruptcy. *See Abramowitz,* 999 F.2d at 1277.

■ For subject matter jurisdiction to exist in a "related to" action, there must be some nexus between the civil proceeding and the Title 11 case. *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 787 (11th Cir.1990) (*Lemco*). We have stated that for courts to assert jurisdiction over a proceeding "related to" a bankruptcy case, the proceeding must " 'have some effect on the administration of the debtor's estate.'" *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987) (*Dogpatch*) (quoting *Zweygardt v. Colorado Nat'l Bank,* 52 B.R. 229, 233 (Bankr.D.Colo.1985)).

■ We have adopted the "conceivable effect" test for determining whether a civil proceeding is related to a bankruptcy case:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy. . . .
>
> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Dogpatch,* 810 F.2d at 786 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)); *see also Abramowitz,* 999 F.2d at 1278 (interpretation of "related to" jurisdiction should promote judicial economy by facilitating resolution of all matters related to a bankruptcy case).

---

5. Subject matter jurisdiction should be determined at the time of removal, when federal jurisdiction was invoked. *See Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990); *Nuclear Eng. Co. v. Scott,* 660 F.2d 241, 248 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); *Gresham Park*

■ Applying this test to the present case, it must be determined whether, at the time CSB removed appellants' action to the bankruptcy court, the outcome of the case conceivably could have affected the administration of Dakota Oat's bankruptcy estate.[5] We conclude it could not.

Appellants' state court action against CSB arose from CSB's conduct in the Dakota Oat bankruptcy, specifically its role in instigating issuance of the notice of automatic stay to Specialty Mills. Appellants' state court action was filed after final resolution in the bankruptcy court of the dispute between Specialty Mills and CSB over the machinery and equipment located in Dakota Oat's mill, and after Dakota Oat's ownership interest in Specialty Mills was transferred to CSB. Specialty Mills asserted no claims against Dakota Oat in the state court action, and Dakota Oat was ultimately dismissed out by the district court. Although CSB obtained Dakota Oat's joinder in the state action after removal, nothing contained in appellants' complaint or CSB's notice of removal might conceivably have altered Dakota Oat's "rights, liabilities, options, or freedom of action", or had an impact upon the handling and administration of Dakota Oat's bankruptcy estate. *See Dogpatch,* 810 F.2d at 786. It was apparent at time of removal that no matter who prevailed in the litigation between appellants and CSB, there would be no effect on the administration of Dakota Oat's bankruptcy estate.

■ There may be some convergence between Dakota Oat's affairs and the dispute between appellants and CSB. However, that possibility does not impart "related to" jurisdiction unless the dispute also affects Dakota Oat's bankruptcy estate or the allocation of assets. *See Lemco,* 910 F.2d at 787; *In re Mayhone,* 165 B.R. 264, 166 (Bankr.W.D.Ark. 1994). We have already concluded that it could not have such an effect.

*Community Org. v. Howell,* 652 F.2d 1227, 1236 (5th Cir.1981); *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1210 (7th Cir.1980), *cert. denied,* 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981); *In re Jones,* 112 B.R. 770, 772 (Bankr.E.D.Va.1990); *In re Calloway,* 70 B.R. 175, 170 (Bankr.N.D.Ind.1986).

## III. CONCLUSION

We hold that the dispute between appellants and CSB is not related to the Dakota Oat bankruptcy, and the district court lacked subject matter jurisdiction of the action under 28 U.S.C. § 1334(b). Accordingly, the judgment of the district court is reversed with directions to remand this action to the state court for further proceedings.