**COMMERCE BANK, N.A.,**
**Plaintiff/Appellee,**

v.

**TIFTON ALUMINUM COMPANY,**
**INC., Defendant/Appellant.**

No. 97–3392–CV–S–RGC.
Bankruptcy No. 92–60637.
Adversary No. 93–6041.

United States District Court,
W.D. Missouri,
Southern Division.

Dec. 9, 1997.

Thomas J. O'Neal, Shugart, Thomson & Kilroy, Springfield, MO, for Plaintiff.

Mark L. McQueary, Daniel, Clampett, Powell & Cunningham, LLC, Springfield, MO, for Defendant.

### ORDER

RUSSELL G. CLARK, Senior District Judge.

This matter comes before the Court on defendant/appellant's appeal from final judgment entered on May 19, 1997, in an adversary proceeding by the United States Bankruptcy Court for the Western District of Missouri. Appellant argues that the Bankruptcy Court was without jurisdiction to hear the adversary proceeding. Appellant also argues that the Bankruptcy Court used an improper measure in rewarding damages to defendant/appellee. In addition, appellant argues that the Bankruptcy Court improperly applied Missouri secured transaction law and that the Bankruptcy Court erred in ruling against appellant on its unjust enrichment counterclaim. For the following reasons, the Court will affirm the Bankruptcy Court's judgment.

The facts as presented on appeal are brief. Win–Vent was a manufacturer of commercial aluminum replacement windows. Appellant Tifton (hereinafter "Tifton") was virtually the sole supplier of aluminum to Win–Vent. Win–Vent was obligated to appellee Com-

merce Bank (hereinafter "Commerce") under three promissory notes with total indebtedness of approximately $1,400,000. Win–Vent's indebtedness to Commerce was properly secured and perfected in virtually all of Win–Vent's assets including Win–Vent's accounts receivable and the proceeds of accounts receivable. Win–Vent continued to pay Tifton for Tifton's products out of Win–Vent's accounts receivables even though such receivables were secured and perfected by Commerce.

In May of 1993, after Win–Vent's obligations to Commerce had matured and become delinquent. Commerce took possession of Win–Vent's business. Win–Vent ceased operation on June 4, 1993. On June 28, 1993. Win–Vent filed a Chapter 11 case which was eventually converted to Chapter 7. On July 13, 1993, Commerce initiated an adversary proceeding against Tifton in the Bankruptcy Court for the Western District of Missouri. Commerce filed a two-count Complaint against Tifton. Count I sought a determination with respect to priority of the bank's liens over Tifton's security interest, and Count II sought recovery for conversion against Tifton. Tifton counterclaimed in the adversary proceeding and asserted claims for equitable lien, priority of security interest, fraudulent and negligent misrepresentation, and unjust enrichment against Commerce.

The Bankruptcy Court ruled against Tifton on its counterclaims on summary judgment but preserved Tifton's unjust enrichment counterclaim for trial. Commerce's Count I was resolved prior to trial. At trial, the Bankruptcy Court ruled against Tifton on its unjust enrichment counterclaim and for Commerce on its conversion claim against Tifton. Tifton thereafter filed the appeal which is currently before this Court. The Court will consider each of Tifton's arguments in turn.

### SUBJECT MATTER JURISDICTION

Tifton argues that the Bankruptcy Court had no jurisdiction to determine Commerce's second claim for relief alleging conversion, and Tifton requests that the Bankruptcy Court's judgment be reversed and that the adversary case be dismissed. "Civil proceedings in bankruptcy cases are divided into two categories, core proceedings and non-core, related proceedings." *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773 (8th Cir.1995). "Non-core, related proceedings are those [proceedings] which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy." *Id.* at 773–74. "[F]or courts to assert jurisdiction over a proceeding related to a bankruptcy case, the proceeding must have some effect on the administration of the debtor's estate." *Id.* at 774.

The Eighth Circuit has adopted the "conceivable effect" test for determining whether a civil proceeding is related to a bankruptcy case. A civil proceeding then is related to bankruptcy when the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 774 (8th Cir.1995). In explaining the "conceivable effect" test, the Eighth Circuit has established that an action is therefore related to bankruptcy if the outcome of that action "could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

In the present case on appeal, the Bankruptcy Court held a trial to determine rights in monies paid to Tifton out of Win–Vent's accounts receivable which was secured by Commerce. Applying the "conceivable effect" test as established by the Eighth Circuit, the Court holds that the Bankruptcy Court properly asserted jurisdiction over the adversarial proceeding. Certainly, Win–Vent's liabilities to either Commerce or Tifton would be affected in a conversion action because a determination of priority over the monies in question would establish a non-prevailing party who would have a larger claim against Win–Vent and a prevailing party who would have a smaller claim against Win–Vent. Further, the administration of Win–Vent's bankruptcy estate is affected directly, and in a significant way, by such a determination by the very fact that priority and amounts owed the parties are affected.

Accordingly, the Court holds that the Bankruptcy Court did properly exercise subject matter jurisdiction in holding the adversarial proceeding.

## MEASURE OF DAMAGES

Tifton next argues that the Bankruptcy Court erred in adopting an improper measure of damages. Specifically, Tifton calculates that the Bankruptcy Court's award to Commerce based upon conversion could overcompensate Commerce for its damages if all potential income from certain property of Win–Vent's estate is realized by Commerce. Tifton argues that damages collected by Commerce would therefore improperly exceed the amount actually owing Commerce.

■■■ Generally, the measure of damages for conversion is the value of the property at the time and place of conversion. *In re Gerken,* 69 B.R. 251, 254 (Bankr.W.D.Mo. 1986). "[W]hen the property converted is the collateral of the plaintiff, the damages cannot exceed the balance due the plaintiff." *Id.* at 254. Tifton does not really argue that the Bankruptcy Court improperly valued the amount, but rather, that the Bankruptcy Court awarded Commerce too much in damages in relation to the balance due to Commerce because Commerce had other secured assets in its possession with which to reduce the total balance owed.

■■■ At the time of the trial, Commerce was owed $1,180,049.08 by Win–Vent. Commerce was awarded $813,000.00 by the Bankruptcy Court for the conversion. Evidence at trial suggested that Commerce could potentially collect an additional $385,000 from certain property of Win–Vent's estate then held by Commerce but not yet liquidated. Without more, the Bankruptcy Court would seem to have overcompensated Commerce in finding damages in the amount of $18,000. However, other evidence was presented at trial that suggested that Commerce would never fully recover the entire amount owed by Win–Vent through liquidation of the assets and recovery in conversion.

For an appeal from a bankruptcy court adversarial proceeding, the standard of review is de novo for the bankruptcy court's legal conclusions and clear error for the bankruptcy court's findings of fact. *In re Usery,* 123 F.3d 1089, 1093–1095 (8th Cir. 1997). Determination of damages in such a proceeding is a finding of fact; accordingly, the Bankruptcy Court's award to Commerce is reviewed by this Court for clear error. *Id. See also,* Bankruptcy Rule 8013; *Vigoro Industries, Inc. v. Crisp,* 82 F.3d 785, 789 (8th Cir.1996) (ascertaining damages is a form of fact finding that can be set aside only if clearly erroneous). Given the evidence as presented to the Bankruptcy Court, this Court cannot say that the Bankruptcy Court clearly erred in finding damages for Commerce in the amount of $813,000.00, therefore, the Court holds that the Bankruptcy Court's damage award to Commerce should be affirmed.

## UNJUST ENRICHMENT

Tifton next argues that the Bankruptcy Court erred in not allowing a cause of action of unjust enrichment to be maintained against Commerce. Tifton argues that Commerce was unjustly enriched because Tifton supplied aluminum to Win–Vent from August of 1992 to June of 1993 which allowed Win–Vent to remain in business even though the aluminum then became collateral to Commerce while Tifton retained no right to receive and keep payment for that product. The Bankruptcy Court held that an unsecured creditor such as Tifton cannot maintain a cause of action for unjust enrichment against the secured creditor in the absence of fraud.

For an appeal from a bankruptcy court adversarial proceeding, the standard of review is de novo for the bankruptcy court's legal conclusions and clear error for the bankruptcy court's findings of fact. *In re Usery,* 123 F.3d 1089, 1093–1095 (8th Cir. 1997). The Court will therefore review de novo the Bankruptcy Court's holding regarding the law as it applies to unjust enrichment. Tifton recognizes that the various jurisdictions are split with regard to whether an unsecured creditor can maintain a cause of action for unjust enrichment against a secured creditor. The Bankruptcy Court essentially adopted the reasoning of *Peerless*

*Packing Co., Inc., v. Malone & Hyde, Inc.,* 180 W.Va. 267, 376 S.E.2d 161 (1988), in holding that an unsecured creditor cannot maintain a cause of action for unjust enrichment against the secured creditor in the absence of fraud.

Tifton, however, urges the adoption of the reasoning as found in *Ninth District Production Credit Association v. Ed Duggan, Inc.,* 821 P.2d 788 (Colo.1991). In *Duggan,* the court held that "[i]n a situation where a secured creditor initiates or encourages transactions between the debtor and supplier of goods ... and benefits from the goods or services supplied to produce such debts, equitable principles require that the secured creditor compensate even an unsecured creditor to avoid being unjustly enriched."

■■■ In reviewing the law and policy behind the different views on unjust enrichment and Article 9 provisions, this Court agrees with the Bankruptcy Court that an unsecured creditor should not be able to circumvent Article 9 provisions with an action in unjust enrichment absent a showing of fraud on the part of the secured creditor. Even if the Court followed the reasoning of *Duggan,* the Bankruptcy Court still did not err in disallowing the unjust enrichment action by Tifton because the record does not clearly indicate that Commerce initiated or encouraged transactions between Win–Vent and Tifton. Tifton seems to argue that, since Commerce allowed Win–Vent to continue operating and purchasing product from Tifton, Commerce was, in fact, encouraging transactions with Tifton. The Court does not believe Commerce's actions rose to the level of encouragement. In fact, Commerce specifically revoked Win–Vent's authority to use the bank's proceeds to pay Tifton. In addition, Tifton could have protected itself by requiring Win–Vent to make cash payment or by using the provisions of Article 9 by taking a purchase money security interest in the goods delivered. The Bankruptcy Court's decision in disallowing an action by Tifton for unjust enrichment will be affirmed.

## UNIFORM COMMERCIAL CODE

Tifton next argues that the Bankruptcy Court misinterpreted the Missouri Uniform Commercial Code in holding that the payment of proceeds by Win–Vent to Tifton was not free and clear of Commerce's interests in the proceeds under the Code. For an appeal from a bankruptcy court adversarial proceeding, the standard of review is de novo for the bankruptcy court's legal conclusions and clear error for the bankruptcy court's findings of fact. *In re Usery,* 123 F.3d 1089, 1093–1095 (8th Cir.1997). The Court will therefore review de novo the Bankruptcy Court's holding regarding its interpretation of the Missouri Uniform Commercial Code and will review for clear error the Bankruptcy Court's findings of fact under the Code.

Both parties agree that Section 400.9–306(2) of the Missouri Commercial Code applies to the disputed proceeds. Section 400.9–306(2) states:

> Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Official Comment 2(c) to Section 400.9–306(2) states:

> Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in the ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of the ordinary course or otherwise in collusion with the debtor to defraud the secured party.

■■■ Pursuant to the Official Comment to Section 400.9–306(2), Tifton argues that Win–Vent's payments to Tifton were made in the ordinary course and are thus free of any claim by Commerce as a secured party of those proceeds. Tifton also argues that, pursuant to Section 400.9–306(2), Tifton received

the proceeds through Commerce's implied consent, and the proceeds are then, under the statute, taken free of Commerce's claims to those secured proceeds. As the Court has discussed previously, the evidence does not show that Commerce encouraged Tifton's transactions with Win–Vent and Commerce certainly did not consent to such transactions. The Bankruptcy Court, therefore, did not clearly err in failing to find that Commerce did consent, either explicitly or impliedly, to the disposition of the proceeds to Tifton.

 The Court also holds that the Bankruptcy Court did not err in holding that Commerce was entitled to the proceeds under Section 400 .9–306(2). The Court notes at the outset that Section 400.9–306(2) does not, in spite of the Official Commentary, refer to transfers made in the ordinary course, and, as a result, the Bankruptcy Court did not err in holding that Commerce was entitled to the proceeds from the secured collateral. However, even if transfers in the ordinary course could be taken free and clear as proceeds from secured collateral, given the facts as presented to the Court, Tifton did not receive the transfers in the "ordinary course."

"Ordinary course" as used in the commentary is not defined, but courts have looked to the definition of "buyer in the ordinary course" for guidance. *See Farmers & Merchants National Bank v. Sooner Cooperative, Inc.,* 766 P.2d 325, 329–30 (Okla.1988). That provision under the Missouri Code is defined as someone taking in good faith and without knowledge that the transfer is in violation of the security interest of a third party. *See* R.S.Mo. § 400.1–201(9). Tifton then would necessarily have had to receive the proceeds in good faith and without knowledge that Tifton was violating Commerce's security interest in those proceeds.

Tifton not only knew of Commerce's security interest in the proceeds, but Tifton also was aware that Commerce had demanded that Win–Vent turn over such collateral, and Tifton was also aware that Commerce had informed Win–Vent that it was not authorized to use any of the proceeds. Other evidence as presented at the adversarial pro-

ceeding suggested that Tifton may not even have taken the proceeds in good faith given that Tifton was aware that Win–Vent had moved its bank account to shield the proceeds from Commerce. Regardless of the construction of Section 400.1–201(9), the Court holds that the Bankruptcy Court did not err in awarding conversion damages to Commerce because Tifton converted proceeds secured by Commerce in violation of 400.1–201(9).

Accordingly, it is

ORDERED that Tifton Aluminum Company Inc.'s appeal is DENIED and the judgment of the Bankruptcy Court is AFFIRMED.