In re FITZGERALDS GAMING COR-
PORATION and FITZGERALDS
INCORPORATED, Debtors.

Fitzgeralds Sugar Creek, Inc., Plaintiff,

v.

Kansas City Station Corporation
and Station Casinos, Inc.,
Defendants.

Bankruptcy No. BK–N–00–33467–GWZ.
Adversary No. 01–4007.

United States Bankruptcy Court,
W.D. Missouri.

March 29, 2001.

Robert J. Hoffman, Bryan Cave LLP, Kansas City, MO, for Plaintiff.

Brooks A. Richardson, Rouse Hendricks German May PC, Kansas City, MO, for Defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

This lawsuit arises out of the grant of a license to operate a riverboat gambling casino in the Kansas City, Missouri area. On December 20, 2000, plaintiff Fitzgeralds Sugar Creek, Inc. (FSCI) filed a Petition in the Circuit Court of Jackson County, Missouri (the State Court Lawsuit) naming Kansas City Station Corporation and Station Casinos, Inc (the Station De-fendants) as defendants. On January 19, 2001, the Station Defendants filed a Notice of Removal with this Court. On February 2, 2001, FSCI filed Plaintiff's Motion to Remand and, alternatively, Plaintiff's Motion for Abstention on the grounds that this Court does not have subject matter jurisdiction over this lawsuit. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

FSCI is a Missouri Corporation that applied for and was denied a Missouri Gaming License. Kansas City Station Corporation is a Missouri Corporation that applied for and was granted a Missouri Gaming License. Station Casino, Inc. is its parent corporation. FSCI's parent corporation filed a Chapter 11 bankruptcy petition in the District of Nevada. FSCI filed a lawsuit against the Station Defendants in Missouri state court alleging tortious interference with business expectancies, fraudulent concealment, and civil conspiracy. The United States Code grants subject matter jurisdiction to the United States District Court and, thus, to the United States Bankruptcy Court, if the lawsuit arises in or under a bankruptcy case or is related to a bankruptcy case. Is the State Court Lawsuit related to the bankruptcy case?

## DECISION

This is a lawsuit between non-diverse parties, neither of whom are debtors, involving Missouri's state gaming laws. The mere fact that FSCI's parent corporation filed a bankruptcy petition does not ratchet this state law proceeding into a bankruptcy proceeding. The lawsuit will not

alter the debtors' rights, liabilities, options, or freedom of action. It will not affect administration of the estate or the allocation of assets under a confirmed plan. The lawsuit is, therefore, not related to a bankruptcy case, and this Court does not have subject matter jurisdiction. The lawsuit will be remanded to the Circuit Court of Jackson County, Missouri.

## FACTUAL BACKGROUND

In 1993 Sugar Creek, Missouri solicited proposals from various companies who wished to operate an excursion gambling boat in Sugar Creek. Four prospective gaming operators made formal proposals, including FSCI and KCSC, for the one remaining Class A license for a riverboat gaming facility in the Kansas City area. The Gaming Commission granted the license to KCSC. FSCI now contends that the Station Defendants engaged in misconduct during the application process, and as a result of that misconduct FSCI was wrongly denied the gaming license. On December 20, 2000, FSCI filed a Petition in the Circuit Court of Jackson County, Missouri. In Count I of the Petition FSCI seeks damages for tortious interference with business expectancies. In Court II of the Petition FSCI seeks damages for fraudulent concealment or fraud by silence. And in Court III of the Petition FSCI seeks damages for civil conspiracy. In all three Counts, FSCI alleges that the Station Defendants violated various Missouri Statutes and regulations enacted to regulate gambling in Missouri through the Missouri Gaming Commission. Specifically, FSCI alleges that the attorney for Station Defendants had ex parte contact with the chairman of the Missouri Gaming Commission, received privileged information from the chairman, and received money from Station Defendants for his misconduct.

On December 5, 2000, just prior to the filing of the State Court Lawsuit, Fitzgerald's Gaming Corporation and Fitzgerald's Incorporated filed a Chapter 11 bankruptcy petition in the Northern District of Nevada. A restructuring agreement, negotiated prior to filing, refers to FSCI as a wholly owned subsidiary of Fitzgeralds Incorporated. Fitzgeralds Gaming Corporation is the parent company of Fitzgeralds Incorporated. Philip D. Griffith, as the sole trustee of the Philip D. Griffith Gaming Trust, is the beneficial owner of a majority interest in Fitzgeralds Gaming Corporation. On December 18, 2000, the Bankruptcy Court for the Northern District of Nevada approved an assignment agreement that assigned to Philip D. Griffith all of debtors' interest in FSCI and their claims against the Station Defendants. In exchange for the assignment, Griffith waived any and all claims he might have against debtors and FSCI and agreed to remit to the bankruptcy estate ten percent of any recovery over $5,000,000.00 from the State Court Lawsuit.

On January 19, 2001, Station Defendants filed a Notice of Removal, a Motion to Join Indispensable Parties or, in the Alternative, to Dismiss, and a Motion to Transfer to the United States Bankruptcy Court for the Northern District of Nevada. On February 2, 2001, FSCI filed a Motion to Remand and Motion for Abstention. This Court held a hearing on March 2, 2001.

At the hearing counsel for FSCI argued that neither the plaintiff nor the defendants are in bankruptcy, that the bankruptcy case involves the corporation that previously owned FSCI, that the Bankruptcy Court in Nevada approved the transfer to Philip Griffith of all of FSCI's stock, and that, by approving the transfer, that same Court has already made a finding that the claims do not affect the administration of the bankruptcy estate.

Further, FSCI claims that this dispute involves state law causes of action, that all of the alleged misconduct occurred in Missouri, that most of the witnesses are in Missouri, and that the dispute specifically involves the defendants' alleged violations of Missouri Gaming laws. FSCI also claims that there is no independent basis for Federal jurisdiction, as there is no Federal question at issue and the parties are non-diverse. For these reasons, FSCI argues that this Court does not have subject matter jurisdiction, therefore, this Court must remand to the Circuit Court of Jackson County, Missouri. Alternatively, FSCI argues that, if this Court finds that it has subject matter jurisdiction, it must or should abstain from hearing this lawsuit

Counsel for defendants argues that this Court has subject matter jurisdiction because this case is related to the bankruptcy case. He claims that the debtors did not assign their own claims against defendants, they only assigned FSCI's claims. He also claims that any recovery over $5,000,000.00 will benefit the bankruptcy estate, thus, this case is related to the bankruptcy case because it could have some conceivable effect on the bankruptcy estate. In essence, the Station Defendants make two arguments. They argue that this Court has subject matter jurisdiction because the case is related to the bankruptcy case. This Court should, therefore, exercise that jurisdiction by granting defendants' Motion to Transfer to the Northern District of Nevada, and to allow that Court to decide all other matters, including Plaintiffs Motion for Abstention and the defendants Motion to Join Necessary Parties and Motion to Dismiss. Alternatively, the defendants argue that this lawsuit arises in the bankruptcy case, therefore, this Court is not mandated to abstain.

I will first address subject matter jurisdiction.

## DISCUSSION

■ The United States Code permits the removal of a pending civil lawsuit from state court to the district court in the district where the civil lawsuit is pending, if the district court would otherwise have jurisdiction of the cause of action:

(a) A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.[1]

Section 1334 of the United States Code confers subject matter jurisdiction on the district court for bankruptcy cases and proceedings:

(a) Except as provided in subsection (b) of this section, the district courts shall have exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[2]

In other words, the district courts have subject matter jurisdiction over a removed lawsuit if the lawsuit arises in or under a bankruptcy case, or is related to a bankruptcy case.[3] If the case is properly be-

---

1. 28 U.S.C. § 1452(a). *See also Specialty Mills, Inc. v. Citizens State Bank (In re Dakota Mills)*, 51 F.3d 770, 773 (8th Cir.1995).

2. 28 U.S.C. § 1334(a) and (b).

3. *Miller & Miller Auctioneers, Inc. v. Ritchie Brothers Auctioneers International, L.P. (In re Missouri Properties, Ltd.)*, 211 B.R. 914, 919 (Bankr.W.D.Mo.1996).

fore the district court, the district court then refers same to the bankruptcy judges for the district:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.[4]

Civil proceedings in a bankruptcy case are categorized as either core proceedings or non-core, related proceedings.[5] Core proceedings are proceedings that arise "only in bankruptcy or involve a right created by federal bankruptcy law." [6]

■ The Station Defendants argue that this lawsuit is a core proceeding because Fitzgerald Incorporated agreed to assign to Philip Griffith all its stock in FSCI, and the parties to that assignment, and the restructuring agreement that incorporated the assignment, consented to the jurisdiction of the bankruptcy court to adjudicate any dispute related to the assignment and agreement. I disagree for three reasons. First, defendants were not parties to either the restructuring agreement or the assignment, thus, they have no standing to raise this issue. Second, even if they were parties, parties to an agreement cannot consent to subject matter jurisdiction. Federal courts are courts of limited jurisdiction and that limited jurisdiction is conferred only by statute or by the United States Constitution.[7] As a re-

sult of this statutory and Constitutional restraint on federal power, parties themselves cannot confer subject matter jurisdiction, their consent to such jurisdiction is irrelevant, they cannot waive the requirement by failing to challenge jurisdiction, and the court can raise the issue *sua sponte* at any time.[8] Third, pursuant to the definition of a core proceeding set forth by the Eighth Circuit, defendants must prove that this cause of action is a core proceeding by proving that it arises only in bankruptcy or involves a right created by the Bankruptcy Code (the Code).[9] Clearly, the alleged violation of Missouri gaming laws is not a core proceeding. At most, the lawsuit in question is a non-core proceeding that is related enough to the bankruptcy case in Nevada to confer subject matter jurisdiction in the district court.

■ Non-core proceedings do not invoke a substantive right created by the Code and they could, and do, exist outside of bankruptcy, despite some relationship to a bankruptcy case.[10] In order for the district court to have subject matter jurisdiction over a non-core proceeding that is related to a bankruptcy case there must be some nexus between the proceeding and the bankruptcy case.[11] Courts have sought to define this nexus in various ways. Some have held that the proceeding must have some conceivable effect on the

---

4. 28 U.S.C. § 157(a).

5. *Specialty Mills, Inc. v. Citizens State Bank (In re Dakota Mills),* 51 F.3d 770, 773 (8th Cir.1995).

6. *Id.*

7. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982).

8. *Id.*

9. *Specialty Mills, Inc.,* 51 F.3d at 773; *National City Bank v. Coopers and Lybrand,* 802 F.2d 990, 993 (8th Cir.1986) (holding that an action did not arise under Title 11 because none of plaintiff's claims were based on a provision of the Code).

10. *Specialty Mills, Inc.,* 51 F.3d at 773–74.

11. *Id.*

administration of the debtors' estate.[12] This is the definition adopted by the Eighth Circuit.[13] In applying the "conceivable effects" test, the Eighth Circuit has established that an action is related to a bankruptcy case if the outcome of that proceeding could alter the debtor's rights, liabilities, options, or freedom of action and could impact upon the handling and administration of the bankruptcy estate.[14] In *Pacor, Inc. v. Higgins,*[15] the court remanded a products liability action after finding that the cause of action between the parties would have no effect on the Manville bankruptcy estate. The Court stated that "[a]t best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville.... the outcome ... would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor."[16] Likewise, in this litigation the debtors are not parties to the action. Nor will the debtors' rights, liabilities or course of action be impacted in any way by the outcome of the litigation. If KSCI prevails, and the recovery is for more than $5,000,000.00, the bankruptcy estate will have more money to distribute. The debtors, however, can take no action to affect the outcome, nor will a favorable outcome alter the allocation of the funds. Likewise, in *National City Bank v. Coopers and Lybrand,*[17] the Bank brought a malpractice cause of action against the accounting firm that failed to discover the lack of perfection of the bank's security interest in accounts receivable of one of the debtors. As a result of the lack of perfection, the debtor-in-possession avoided the bank's security interest. The Court found an insufficient nexus for subject matter jurisdiction because the lawsuit in question could not affect the bankruptcy estate of the debtor or its subsidiaries.[18] At most, the Court found that the lawsuit was a precursor to a potential indemnification action against one of the debtors.[19] In *Yukon Energy Corporation v. Brandon Investments, Inc. (In re Yukon Energy Corporation),*[20] the bankruptcy court found that it had non-core related jurisdiction over a lawsuit filed by the debtor against a former board member and the dummy corporation that the board member allegedly used to fraudulently revive a lien. The Court found that resolution of the fraud claim impacted the administration of the bankruptcy estate because the fraudulent revival of the lien "impaired Yukon's ability to reorganize."[21] That is not the situation here. The debtors in this case have already executed a restructuring agreement that requires the liquidation of debtors' assets either by private sale or auction

12. *See Yukon Energy Corp. v. Brandon Investments, Inc. (In re Yukon Energy Corp.),* 138 F.3d 1254, 1259 (8th Cir.1998); *Kocher v. Dow Chemical Co.,* 132 F.3d 1225, 1230 (8th Cir.1997); *Specialty Mills, Inc.,* 51 F.3d at 773; *Abramowitz v. Palmer,* 999 F.2d 1274, 1277 (8th Cir.1993); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.),* 810 F.2d 782, 786 (8th Cir. 1987); *National City Bank* 802 F.2d at 994; *Commerce Bank, N.A. v. Tifton Aluminum Co.,* 217 B.R. 798, 800 (W.D.Mo.1997).

13. *Id.*

14. *Commerce Bank, N.A. v. Tifton Aluminum Co.,* 217 B.R. at 800 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984)).

15. *Id.*

16. *Id.* at 995.

17. 802 F.2d 990 (8th Cir.1986).

18. *Id.* at 994.

19. *Id.* at 993.

20. 138 F.3d 1254 (8th Cir.1998).

21. *Id.* at 1259.

no later than June 15, 2001.[22] The outcome of this litigation will have no impact on that sale and will not influence the price of debtors' assets. Any funds recovered from the litigation will be distributed to debtors' creditors in the same manner as the proceeds from the sale of debtors' assets. There is no action debtors can take at this time to influence the outcome of the litigation, nor will any recovery from the litigation alter the course of debtors' bankruptcy case.

Other Courts hold that a court has subject matter jurisdiction over a related matter if the exercise of jurisdiction would promote judicial economy by facilitating the resolution of all matters related to a bankruptcy case.[23] In *Abramowitz v. Palmer*,[24] the purchaser of debtor's dental practice brought a non-dischargeability proceeding in the bankruptcy court and alleged fraud by both the debtor and the nondebtor spouse. The Court found it had subject matter jurisdiction over both the non-dischargeability action and the related fraud claim against the nondebtor spouse because the plaintiff traced the proceeds of the sale into a home jointly owned by debtor and his spouse. The Eighth Circuit affirmed and stated that bankruptcy courts are "to be an efficient means of disposing of debtor's entire bankruptcy estate, ... and any 'interpretation of [related to jurisdiction] must ... avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." ' Such a test is not applicable in this case. This lawsuit does not involve the debtors in Nevada. At best the debtors are the former parents of plaintiff. By assignment, they have divested themselves of any interest in plaintiff. The Bankruptcy Court in Nevada approved the assignment, and that Order is now final. There is no piecemeal litigation here. There is no action the debtors or their estates can take to alter the outcome or increase the recovery to the bankruptcy estate. All that remains is to distribute the funds.

This is a dispute between parties who are not in bankruptcy. In the event FSCI prevails, then the Nevada debtors may be in a position to claim a share of the proceeds. At that point, the bankruptcy court would have jurisdiction to resolve any issue as to the debtors' rights. But this litigation is a mere precursor to a future claim by the debtors against FSCI—unless and until FSCI obtains a verdict in excess of $5,000,000, the course of this litigation does not affect the bankruptcy estate.

Using either of the above definitions, I find that there is not a sufficient nexus between this lawsuit and the bankruptcy case in Nevada to confer subject matter jurisdiction on the district court. I, therefore, find that this case must be remanded to the Circuit Court of Jackson County, Missouri.

■ Although I find no subject matter jurisdiction, even were I to find the district court had subject matter jurisdiction over this action and referred same to this Court pursuant to 28 U.S.C. § 157(a), I would be compelled to abstain.

■ As discussed above, federal courts have original, but not exclusive, jurisdiction over lawsuits that are related to a bankruptcy case.[25] Indeed, section 1334(c) of Title 28 of the United States Code sets

---

22. Doc. # 4, Ex. C, pg. 12.

23. *Abramowitz v. Palmer*, 999 F.2d 1274, 1278 (8th Cir.1993).

24. *Id.*

25. 28 U.S.C. § 1334(b).

out certain circumstances in which the District Court, or, by reference the Bankruptcy Court, may abstain in favor of the state courts,[26] and other circumstances in which it must so abstain.[27] Section 1334(c)(2), which deals with "mandatory abstention," provides as follows:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[28]

The Court has no discretion here. In other words, if the six elements set forth in section 1334(c)(2) exist, the district court does not have jurisdiction to decide the proceeding.[29] The elements that a court must ascertain prior to determining if it is prohibited from deciding the claim or cause of action are: (1) whether a timely motion is made; (2) whether the claim or cause of action is based upon state law; (3) whether the claim or cause of action is related to a bankruptcy case, but did not arise in or under the bankruptcy case; (4) whether the only basis for original jurisdiction in federal district court is the bankruptcy filing; (5) whether the action has already commenced in state court; and (6)

whether the action can be timely adjudicated in the state court system.[30] I believe the facts of this proceeding can be readily applied to all six elements. Plaintiff filed its motion to abstain on February 2, 2001, 13 days after defendants filed their Notice of Removal. I find the motion was timely filed. This adversary proceeding is based upon a Petition alleging tortious interference with business expectancies, fraudulent concealment, and civil conspiracy. The parties do not dispute that these are all state law causes of action, thus satisfying the second element of mandatory abstention. The third element requires a finding that the state court case is a non-core proceeding. I have already made the determination that, at most, this is a non-core, related proceeding. The fourth element requires a finding that the only basis for federal jurisdiction is the related bankruptcy case. Again, I have already found that the parties are not diverse and there is no federal question at issue in this case. The fifth element requires that the action be already pending in state court. Obviously, in order for defendants to remove the case, the case had to be pending in state court. There is some controversy as to whether mandatory abstention applies in a removed case, as once the case is removed it is no longer pending in state court.[31] The vast majority of courts, however, hold that mandatory abstention applies to cases that have been removed to federal court.[32] I agree, since the removed state legislation has been commenced and upon remand, is capable of

**26.** *Id.* at § 1334(c)(1).

**27.** *Id.* at § 1334(c)(2).

**28.** *Id.*

**29.** *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, ——, n. 1, 116 S.Ct. 494, 499, n. 1, 133 L.Ed.2d 461 (1995) (Ginsburg, J. concurring); *Burke v. Donington, Karcher, Salmond,* *Ronan & Rainone (In re Donington, Karcher, Salmond, Ronan & Rainone)*, 194 B.R. 750, 757 (D.N.J.1996).

**30.** 28 U.S.C. S 1334(c)(2).

**31.** *Christo v. Padgett*, 223 F.3d 1324, 1330 (11th Cir.2000).

**32.** *Id.* at 1331 (citations omitted).

timely adjudication in state court.[33] Finally, I must abstain in this lawsuit if I find that the matter can be timely adjudicated in the state court system. Counsel for defendants conceded this point at the hearing. I, therefore, find that the factors for mandatory abstention are all present. Even if this Court does have subject matter jurisdiction, I am obligated to abstain and remand this proceeding to the Circuit Court of Jackson County, Missouri.

An Order in accordance with this Memorandum Opinion will be entered this date.