Turner ANSLEY, Plaintiff–Appellee,

v.

**AMERIQUEST MORTGAGE COMPANY, Defendant–Appellant.**

**No. 02–55848.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2003.

Filed Aug. 20, 2003.

Rachael H. Berman and David Sturgeon–Garcia, Buchalter, Nemer, Fields & Younger, San Francisco, CA, for the defendant-appellant.

Jeffrey Wilens, Lakeshore Law Center, Mission Viejo, CA, for the plaintiff-appellee.

Before SCHROEDER, Chief Judge, GRABER, Circuit Judge, and SINGLETON,* District Judge.

---

* The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation.

## OPINION

SINGLETON, District Judge.

Ameriquest Mortgage Company ("Ameriquest") appeals the district court's order awarding attorney fees to Turner Ansley, following the court's order remanding Ansley's action to Orange County Superior Court. 28 U.S.C. § 1447(c). Ansley's state court complaint alleged that Ameriquest charged him a mortgage prepayment penalty in an amount exceeding that permitted by California Civil Code § 2954.9 and California Business & Professions Code § 10242.6. Ameriquest removed the action to federal court, arguing that the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801–3805 ("Parity Act"), completely preempts California law and gives jurisdiction to the federal courts. The district court remanded the action, reasoning that the Parity Act must completely preempt all California laws relating to alternative mortgage transactions in order to create federal jurisdiction, and finding that it failed to do so. For the reasons set forth below, we affirm.

## BACKGROUND AND PROCEDURAL HISTORY

On December 3, 2001, Turner Ansley filed a complaint in Orange County Superior Court. The complaint alleged that Ameriquest violated the California Consumer Legal Remedies Act, Cal. Civ.Code § 1770 (West 2003), by requiring prepayment penalty assessments in excess of amounts allowed by California law. Specifically, Ansley alleged that he obtained a mortgage loan from Ameriquest, subsequently refinanced, and was charged a prepayment penalty of six months' interest on 100 percent of the balance of the loan. Section

2954.9 of the Civil Code and Section 10242.6 of the Business & Professions Code, however, limit prepayment penalties to six months' advanced interest on 80 percent of the loan. Ansley also alleged that Ameriquest's conduct constituted an unfair trade practice under Section 17200 of the Business & Professions Code.

The operative agreement for the parties' mortgage transaction states:

12. Governing Law Provision

This Note and the related Security Interest are governed by the Alternative Mortgage Transaction Parity Act of 1982, 12 USC § 3802 et. seq., and, to the extent not inconsistent therewith, Federal and State law applicable to the jurisdiction of the Property.

Ameriquest filed a notice of removal on January 4, 2002, and a corrected notice of removal on January 16, 2002. On February 28, 2002, Ansley filed a motion to remand and a request for attorney fees. On April 9, 2002, the district court granted Ansley's motion and remanded the case to Orange County Superior Court. The district court also awarded attorney fees to Ansley in the amount of $3,600. Ameriquest timely filed its notice of appeal on May 10, 2002. We have jurisdiction pursuant to 28 U.S.C. § 1291. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 932 (9th Cir.2001), *cert. denied*, 534 U.S. 1104, 122 S.Ct. 903, 151 L.Ed.2d 872 (2002).

## DISCUSSION

■ An award of fees and costs associated with removal or remand under 28 U.S.C. § 1447(c) is reviewed for an abuse of discretion. *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 861 (9th Cir.2001). Although an order remanding a case to state court is not reviewable, 28 U.S.C. § 1447(d), "review of a fee award under § 1447(c) must include a de novo examination of whether the remand order was legally correct," *Gibson*, 261 F.3d at 932

(citation and quotation marks omitted). Accordingly, in reviewing the award of attorney fees, we must first consider the merits of Ameriquest's arguments in favor of removal to the district court. *Id.*

A. Alternative Mortgage Transaction Parity Act of 1982

■ Ameriquest filed its notice of removal and corrected notice of removal under 28 U.S.C. § 1441(b). "The threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir.1998). Here, Ameriquest contends that Ansley's claims arise under federal law, specifically, the Parity Act, and thus fall within the district court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. In scrutinizing a complaint in search of a federal question, a court applies the well-pleaded complaint rule. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). For removal to be appropriate under the well-pleaded complaint rule, a federal question must appear on the face of a properly pleaded complaint. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).

■ Ameriquest does not argue that a federal question appears on the face of Ansley's complaint. Rather, Ameriquest argues that federal jurisdiction is proper because Ansley's claims are completely preempted by the Parity Act and applicable regulations promulgated by the Office of Thrift Supervision. The jurisdictional doctrine of complete preemption serves as an exception to the well-pleaded complaint rule. *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000). It provides that, in some instances, "the preemptive force of [federal statutes]

is so strong that they completely preempt an area of state law. In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (citations and quotation marks omitted). "[C]omplete preemption occurs only when Congress intends not merely to preempt a certain amount of state law, but also intends to transfer jurisdiction of the subject matter from state to federal court." *Wayne v. DHL Worldwide Express,* 294 F.3d 1179, 1183 (9th Cir.2002).

▌ Complete preemption, however, arises only in "extraordinary" situations. *Id.* at 1183–84. "The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." *Id.* at 1184. The United States Supreme Court has identified only three federal statutes that satisfy this test: (1) Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185; (2) Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132; and (3) the usury provisions of the National Bank Act, 12 U.S.C. §§ 85, 86. *Beneficial Nat'l Bank v. Anderson,* —— U.S. ——, 123 S.Ct. 2058, 2062–64, 156 L.Ed.2d 1 (2003).

▌ Accordingly, we must address whether the Parity Act provides a basis for complete preemption. Congress enacted the Parity Act in 1982 after finding that "increasingly volatile and dynamic changes in interest rates" had "seriously impaired the ability of housing creditors to provide consumers with fixed-term, fixed-rate credit secured by interests in real property." 12 U.S.C. § 3801(a)(1). Congress noted that the availability of loans other than traditional fixed-rate, fixed-term transactions was essential to an adequate supply of loans secured by residential property. *Id.* §§ 3801(a)(2), 3802(1). Accordingly, Congress enacted the Parity Act

to eliminate the discriminatory impact that ... regulations [authorizing federal institutions to engage in alternative mortgage financing] have upon nonfederally chartered housing creditors and provide them with parity with federally chartered institutions by authorizing all housing creditors to make, purchase, and enforce alternative mortgage transactions so long as the transactions are in conformity with the regulations issued by the Federal agencies.

*Id.* § 3801(b).

The Parity Act provides:

In order to prevent discrimination against State-chartered depository institutions, and other nonfederally chartered housing creditors, with respect to making ... alternative mortgage transactions, housing creditors may make ... alternative mortgage transactions, except that this section shall apply—

(1) with respect to banks, only to transactions made in accordance with [certain regulations issued by the Comptroller of the Currency];

(2) with respect to credit unions, only to transactions made in accordance with [other regulations issued by the National Credit Union Administration Board]; and

(3) with respect to all other housing creditors ... only to transactions made in accordance with regulations governing alternative mortgage transactions as issued by the Director of the Office of Thrift Supervision for federally chartered savings and loan associations, to the extent that such regulations are authorized by rulemaking authority granted to the Director of the Office of Thrift Supervision with regard to federally chartered savings and loan associations under laws other than this section.

*Id.* § 3803(a). Regarding preemption, the Parity Act provides that "[a]n alternative

mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation." *Id.* § 3803(c).

In discussing the preemption provision quoted above, the court in *Black v. Financial Freedom Senior Funding Corp.*, 92 Cal.App.4th 917, 112 Cal.Rptr.2d 445 (Cal. App.2001), *cert. denied*, 536 U.S. 959, 122 S.Ct. 2662, 153 L.Ed.2d 837 (2002), analyzed two possible interpretations. First, *Black* considered that the phrase "any State constitution, law, or regulation" precluded all state regulation of alternative mortgage transactions involving state-chartered housing creditors. *Id.* at 455. *Black* concluded, however, that a more reasonable interpretation of the preemption language was that

> the phrase "any state constitution, law, or regulation" can be interpreted as implicitly limited to those that prohibit or impede alternative mortgage transactions or that *conflict* with federal regulations deemed applicable to non-federally chartered housing creditors, i.e., the regulations that the transaction must be made "in accordance with." This interpretation would leave broad room for state regulation because there are only four federal regulations with which the transactions of housing creditors must comply.

*Id.*[1]

The *Black* court found that other provisions of the Parity Act supported the above interpretation of the Act's preemption language. For example, the Parity Act requires housing creditors to be "licensed under applicable State law" and "subject to the applicable regulatory requirements and enforcement mechanisms

provided by State law." 12 U.S.C. § 3802(2).

*Black* noted further:

> When Congress enacted the Parity Act, it was surely aware that such forms of state regulation then existed or, at least, could come into existence in the future because it had no control over the changes and developments that states could subsequently make to their regulatory schemes. Given the breadth accorded the states in regulating "housing creditors" in 12 United States Code section 3802, the preemption language of 12 U.S.C. section 3803(c) can certainly be interpreted as not extending to state laws that concern aspects of those transactions other than those addressed by the four applicable federal regulations.

112 Cal.Rptr.2d at 456.

Ameriquest argues that we should ignore *Black*'s conclusion that the Parity Act does not preempt state law and instead follow the holdings of *National Home Equity Mortgage Ass'n v. Face*, 239 F.3d 633 (4th Cir.), *cert. denied*, 534 U.S. 823, 122 S.Ct. 58, 151 L.Ed.2d 26 (2001), and *Shinn v. Encore Mortgage Services, Inc.*, 96 F.Supp.2d 419 (D.N.J.2000). Both courts held that the Parity Act preempted specific state laws restricting prepayment fees, but neither expressly found complete preemption necessary for federal question jurisdiction.

In *Face*, a trade association initiated the case by filing a declaratory relief action in federal court. 239 F.3d at 636. The *Face* decision concerned the preemption of a state law limiting prepayment fees, but the issue of removal jurisdiction never arose. The particular issue presented in *Face* was "whether a non-federally chartered institu-

---

**1.** Regulations have been issued with respect to only four aspects of mortgage financing: Late charges; Prepayments; Adjustments to home loans; and Disclosures for variable rate transactions. 12 C.F.R. §§ 560.33–560.35, 560.210, 560.220.

tion in Virginia may require and enforce a prepayment fee in a mortgage agreement notwithstanding Virginia's limitation on prepayment penalties as contained [in the Virginia Code]." *Id.* at 638. *Face* concluded that, because prepayment fees were one of the subjects addressed in the federal regulations, the Parity Act preempted the state law limiting prepayment fees. *Id.* at 638–40.

*Face* noted further, however, that Section 807(b) of the Parity Act "is not a provision that defines the scope of federal preemption. Rather, it defines the gate through which the non-federally chartered housing creditors must pass in order to obtain the benefits of the Parity Act." *Id.* at 640. Regardless, *Face* simply did not discuss the application of the complete preemption doctrine and did not hold that the Parity Act has completely preempted state law so as to confer exclusive federal jurisdiction.

In *Shinn*, the second case cited by Ameriquest in support of its position, the plaintiffs originally filed a lawsuit in state court, raising only state law claims. Plaintiffs then amended the complaint to allege a federal law claim under the Truth in Lending Act. The lawsuit was removed to federal court, and defendant filed a motion to dismiss, claiming federal preemption under the Parity Act. The issue of whether the federal court had removal jurisdiction under the complete preemption doctrine never arose because the plaintiffs created removal jurisdiction by alleging a violation of a different federal law. It is worth noting, however, that the New Jersey law at issue in *Shinn* completely prohibited prepayment penalties, thus indisputably conflicting with the Parity Act. 96 F.Supp.2d at 421. The California law at issue here, however, simply imposes a reasonable limit on the amount of the prepayment penalty.

Nothing in the Parity Act establishes that the preemptive force of the Act is so extraordinary that Congress clearly manifested an intent to convert state law claims into federal question claims. The Act appears equivalent in scope to other federal laws held not to completely preempt similar state laws. *See, e.g., Wayne,* 294 F.3d at 1184 (holding that the Airline Deregulation Act of 1978 does not provide a basis for federal jurisdiction under the complete preemption doctrine); *Hofler v. Aetna U.S. Healthcare of Cal., Inc.,* 296 F.3d 764, 768 (9th Cir.2002) (per curiam) (holding that the Medicare program does not completely preempt state tort law claims); *Holman v. Laulo–Rowe Agency,* 994 F.2d 666 (9th Cir.1993) (holding that the Federal Crop Insurance Act does not create complete preemption). The Parity Act simply does not control every alternative mortgage issued by every creditor in every situation. The district court properly ruled, therefore, that the Parity Act did not completely preempt all California laws relating to alternative mortgage transactions so as to create federal jurisdiction. On de novo review, we hold that the district court's remand order was legally correct.

## B. Attorney Fees

■ "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A court may award attorney fees when removal is wrong as a matter of law. *Balcorta,* 208 F.3d at 1106 n. 6; *see also Moore v. Permanente Med. Group, Inc.,* 981 F.2d 443, 448 (9th Cir. 1992) (holding that "bad faith need not be demonstrated" to award fees). Additionally, an award of fees and costs associated with removal or remand under 28 U.S.C. § 1447(c) is reviewed for an abuse of discretion. *Kanter,* 265 F.3d at 861.

The district court found that Ameriquest did not provide any authority in support of its argument that the Parity Act completely preempts California law so as to justify removal. The district court's finding was not an erroneous view of the law or a clearly erroneous assessment of the evidence. *Moore*, 981 F.2d at 447. Ameriquest does not argue that the fee award was unreasonable in light of the attorney work required to support the motion to remand. Accordingly, the district court's award of attorney fees was not an abuse of discretion. The parties are to bear their own costs and attorney fees on appeal.

AFFIRMED.