327 F.Supp.2d 1022 (2004)
Kevin ARNOLD, et al., Plaintiffs,
v.
FIRST GREENSBORO HOME EQUITY, INC., et al., Defendants.
No. 4:03-CV-1849 CAS.
United States District Court, E.D. Missouri, Eastern Division.
April 15, 2004.
*1023 *1024 David W. Bauman, Michael J. Flannery, James J. Rosemergy, David Danis Law Firm, P.C., Jeffrey S. Singer, Fox and Goldblatt, St. Louis, MO, for Plaintiffs.
James B. Day, Blackwell and Associates, P.C., O'Fallon, MO, for Consolidated Filer Plaintiff.
Edward O. Gramling, Todd W. Ruskamp, Shook and Hardy, Kansas City, MO, for Defendants.

MEMORANDUM AND ORDER
SHAW, District Judge.
This removed matter is before the Court on plaintiffs' Motion to Remand, defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and (6), Federal Rules of Civil Procedure, and the Chapter 7 Bankruptcy Trustee's Motion to Intervene and for Substitution of Party Plaintiff. For the following reasons, the Court will grant the motion to remand and the other motions will remain pending for resolution by the state court.

I. Background.

This action was originally filed in the Circuit Court of St. Louis County, Missouri on November 18, 2003 by plaintiffs Kevin Arnold and Olive "Bing" Dempewolf-Arnold. Plaintiffs' putative class action petition alleges one count against defendants First Greensboro Home Equity, Inc. and Household Financial Services, Inc. for violation of Mo.Rev.Stat. § 408.036 (2000). Plaintiffs allege that defendants have attempted to collect a prepayment penalty under certain loan agreements executed by plaintiffs and First Greensboro, in violation of the state statute. Defendants removed the matter to this Court on December 24, 2003, pursuant to 28 U.S.C. §§ 1331 and 1334. Defendants' notice of removal cited two grounds: (1) federal question jurisdiction arising from the complete preemption of plaintiffs' claim under the Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801, et seq., and (2) bankruptcy-related jurisdiction under 28 U.S.C. § 1334, based on plaintiffs' bankruptcy filing on July 31, 2002. Defendants subsequently filed their motion to dismiss asserting that plaintiffs lack standing to assert the claims alleged, as any action must be prosecuted by the bankruptcy trustee as the real party in interest.
*1025 Plaintiffs move to remand, asserting that the case is not properly removable because their petition asserts a purely state law cause of action which is not completely preempted by federal law. Plaintiffs also state that their alleged lack of standing is a defense which may not serve as a basis for the exercise of federal jurisdiction. Finally, plaintiffs assert that their claim is not related to their bankruptcy cases within the meaning of 28 U.S.C. § 1334(b), but even if it is, the Court must abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1334(c)(2).

II. Legal Standard.

The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied. Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir.1969). Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir.1997), cert. denied, 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998). In determining whether a claim "arises under" federal law, courts must be "mindful that the nature of federal removal jurisdiction  restricting as it does the power of the states to resolve controversies in their own courts  requires strict construction of the legislation permitting removal." Nichols v. Harbor Venture, Inc., 284 F.3d 857, 861 (8th Cir.2002) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). If "at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case must be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c).
The propriety of removal to federal court depends on whether the claim comes within the scope of the federal court's subject matter jurisdiction. See 28 U.S.C. § 1441(b). "A defendant may remove a state court claim to federal court only if the claim originally could have been filed in federal court, and the well-pleaded complaint rule provides that a federal question must be presented on the face of the properly pleaded complaint to invoke federal court jurisdiction." Gore v. Trans World Airlines, 210 F.3d 944, 948 (8th Cir.2000) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)), cert. denied, 532 U.S. 921, 121 S.Ct. 1358 (2001).[1]
A federal question is raised in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Peters v. Union Pacific Railroad Co., 80 F.3d 257, 260 (8th Cir.1996) (quoting Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). In most instances, the presence or absence of a federal question is governed by the well-pleaded complaint rule "which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392, 107 S.Ct. 2425. A plaintiff is the master of his complaint, and may avoid federal removal jurisdiction by exclusive reliance on state law. Id.
"Congress has long since decided that federal defenses do not provide a basis for removal." Id. at 399, 107 S.Ct. 2425. "Thus, a case may not be removed *1026 to federal court on the basis of a defense, even if the defense in anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (internal quotations and alterations omitted). There are limited circumstances, however, in which the presentation of a federal defense will give rise to federal jurisdiction. The doctrine of complete preemption is a narrow exception to the well-pleaded complaint rule. Krispin v. May Dep't Stores Co., 218 F.3d 919, 922 (8th Cir.2000). Complete preemption applies in circumstances where certain federal statutes are deemed to possess "`extraordinary pre-emptive power,' a conclusion courts reach reluctantly." Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir.1996) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Under this doctrine, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393, 107 S.Ct. 2425. The artful pleading doctrine, which provides that a plaintiff may not defeat removal by omitting to plead necessary federal questions, Rivet, 522 U.S. at 475, 118 S.Ct. 921, is limited to federal statutes which "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal." Metropolitan Life, 481 U.S. at 63, 107 S.Ct. 1542.
"Whether federal law pre-empts a state-law cause of action is a question of congressional intent." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Courts "must determine whether Congress has clearly manifested an intent to make a cause of action pleaded under state law removable to federal court, mindful that in the ordinary case federal preemption is merely a defense to a plaintiff's lawsuit." Magee v. Exxon Corp., 135 F.3d 599, 602 (8th Cir.1998) (internal citation omitted) (complete preemption doctrine did not apply to Truth-in-Lending Act to create federal-question removal jurisdiction). The complete preemption doctrine only applies where a statutory scheme has "extraordinary preemptive power." State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1108 (8th Cir.), cert. denied, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999). The Supreme Court has approved its use in only three areas: (1) claims under Section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141, et seq., see Avco Corp. v. Aero Lodge No. 735, Int'l. Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 561-62, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); (2) claims under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., by a participant or beneficiary, see Metropolitan Life, 481 U.S. at 66-67, 107 S.Ct. 1542; and (3) claims alleging a present right to possession of Indian tribal lands, see Oneida Indian Nation of New York State v. County of Oneida, New York, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). "[T]he prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court." Metropolitan Life at 69, 107 S.Ct. 1542 (J. Brennan, concurring).

III. Discussion.

The Court addresses plaintiffs' motion to remand first, because it must determine whether subject matter jurisdiction exists in this case.
*1027 In opposing the motion to remand, defendants argue the case is properly removable because it is related to plaintiffs' prior bankruptcy case under Title 11, United States Code, citing 28 U.S.C. §§ 1452(a) and 1334(b). In the alternative, defendants argue that the petition raises a claim that is completely preempted by the Alternative Mortgage Transaction Parity Act ("AMTPA" or the "Parity Act") and regulations promulgated thereunder. In their Notice of Removal, defendants also argue that the petition raises a substantial federal question and that "field preemption" applies.

A. Complete Preemption.
The Court will address defendants' complete preemption argument first, as this argument was the primary focus of defendants' Notice of Removal. See Notice of Removal, ¶¶ 4-8. Defendants assert that plaintiffs' claims for violation of Mo.Rev.Stat. § 408.036 with respect to prepayment provisions of the applicable loan documents are completely preempted by AMTPA, which specifically provides for preemption of state law provisions related to state law pre-payment statutes. The preemptive language on which defendants rely is contained in 12 U.S.C. § 3803(c), which states: "An alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law or regulation." 12 U.S.C. § 3803(c).
Defendants also assert that in 1996 the Office of Thrift Supervision ("OTS") promulgated 12 C.F.R. § 560.220 and issued an Opinion Letter which concluded that AMTPA preempted the application of a state prepayment fee statute to an alternative mortgage transaction. 1996 OTS Opinion, 1996 OTS Lexis 19. Defendants state that at least three federal courts subsequently found that AMTPA preempts enforcement of state law prepayment fee restrictions. See National Home Equity Mortgage Ass'n v. Face, 239 F.3d 633, 640 (4th Cir.), cert. denied, 534 U.S. 823, 122 S.Ct. 58, 151 L.Ed.2d 26 (2001); Davis v. G N Mortgage Corp., 244 F.Supp.2d 950 (N.D.Ill.2003); and Shinn v. Encore Mortgage Svcs., Inc., 96 F.Supp.2d 419, 425-26 (D.N.J.2000).
The Eighth Circuit has not addressed whether Congress intended the Parity Act to completely preempt state law claims relating to alternative mortgage transactions. The Court in independent research found only one federal circuit court of appeals decision which has addressed the issue of complete preemption and removal under the Parity Act.[2] The Ninth Circuit held that the Parity Act did not completely preempt all California laws relating to alternative mortgage transactions so as to create federal-question jurisdiction for removal purposes. Ansley v. Ameriquest Mortgage Co., 340 F.3d 858, 864 (9th Cir.2003). The Court finds the Ninth Circuit's discussion of the issue informative:
Congress enacted the Parity Act in 1982 after finding that "increasingly volatile and dynamic changes in interest rates" had "seriously impaired the ability of housing creditors to provide consumers with fixed-term, fixed-rate credit secured by interests in real property." 12 U.S.C. § 3801(a)(1). Congress noted that the availability of loans other than traditional fixed-rate, fixed-term transactions was essential to an adequate supply of loans secured by residential property. Id. § 3801(a)(2), 3802(1). Accordingly, Congress enacted the Parity Act

*1028 to eliminate the discriminatory impact that ... regulations [authorizing federal institutions to engage in alternative mortgage financing] have upon nonfederally chartered housing creditors and provide them with parity with federally chartered institutions by authorizing all housing creditors to make, purchase, and enforce alternative mortgage transactions so long as the transactions are in conformity with the regulations issued by the Federal Agencies.
The Parity Act Provides:
In order to prevent discrimination against State-chartered depository institutions, and other nonfederally chartered housing creditors, with respect to making ... alternative mortgage transactions, housing creditors may make ... alternative mortgage transactions, except that this section shall apply 
(1) with respect to banks, only to transactions made in accordance with [certain regulations issued by the Comptroller of the Currency];
(2) with respect to credit unions, only to transactions made in accordance with [other regulations issued by the National Credit Union Administration Board]; and
(3) with respect to all other housing creditors ... only to transactions made in accordance with regulations governing alternative mortgage transactions as issued by the Director of the Office of Thrift Supervision for federally chartered savings and loan associations, to the extent that such regulations are authorized by rulemaking authority granted to the Director of the Office of Thrift Supervision with regard to federally chartered savings and loan associations under laws other than this section.

Id. § 3803(a). Regarding preemption, the Parity Act provides that "[a]n alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation."
Ansley, 340 F.3d at 862-63.
In determining the meaning of the Parity Act's preemption language, the Ninth Circuit found a decision of the California Court of Appeals persuasive, Black v. Financial Freedom Senior Funding Corp., 92 Cal.App.4th 917, 112 Cal.Rptr.2d 445 (Cal.App.2001), cert. denied, 536 U.S. 959, 122 S.Ct. 2662, 153 L.Ed.2d 837 (2002). In Black, the court first considered whether the phrase "any State constitution, law, or regulation" precluded all state regulation of alternative mortgage transactions involving state-chartered housing creditors, but concluded a more reasonable interpretation of the preemption language was
that the phrase "any state constitution, law, or regulation" can be interpreted as implicitly limited to those that prohibit or impede alternative mortgage transactions or that conflict with federal regulations deemed applicable to non-federally chartered housing creditors, i.e., the regulations that the transaction must be made "in accordance with." This interpretation would leave broad room for state regulation because there are only four federal regulations with which the transactions of housing creditors must comply.[3]
Black, 112 Cal.Rptr.2d at 455.
The Ninth Circuit observed that the court in Black also found other provisions *1029 of the Parity Act supported its more restrictive interpretation of the Act's preemption language. "For example, the Parity Act requires housing creditors to be `licensed under applicable State law' and `subject to the applicable regulatory requirements and enforcement mechanisms provided by State law.'" 12 U.S.C. § 3802(2); Ansley, 340 F.3d at 863.
The Black decision stated further:
When Congress enacted the Parity Act, it was surely aware that such forms of state regulation then existed or, at least, could come into existence in the future because it had no control over the changes and developments that states could subsequently make to their regulatory schemes. Given the breadth accorded the states in regulating "housing creditors" in 12 United States Code section 3802, the preemption language of 12 U.S.C. § 3803(c) can certainly be interpreted as not extending to state laws that concern aspects of those transactions other than those addressed by the four applicable federal regulations.
Black, 112 Cal.Rptr.2d at 456.
The Ninth Circuit found that "[n]othing in the Parity Act establishes that the preemptive force of the Act is so extraordinary that Congress clearly manifested an intent to convert state law claims into federal question claims. The Act appears equivalent in scope to other federal laws held not to completely preempt similar state laws." Ansley, 340 F.3d at 864 (citing cases discussing the Airline Deregulation Act of 1978, the Medicare program, and the Federal Crop Insurance Act). The Ninth Circuit concluded, "The Parity Act simply does not control every alternative mortgage issued by every creditor in every situation," and as a result, "the Parity Act did not completely preempt all California laws relating to alternative mortgage transactions so as to create federal jurisdiction." Id. Cf. National Home Equity Mortgage Ass'n v. Office of Thrift Supervision, 271 F.Supp.2d 264, 269-71 (D.D.C.2003) (concluding that "neither the plain language of AMTPA nor its legislative history establish that Congress expressly preempted all state laws governing" alternative mortgage transactions).
The cases on which defendants rely do not support their contention that AMTPA completely preempts state law governing alternative mortgage transactions. In all three cases the courts did not address the complete preemption issue, but instead addressed whether AMTPA required dismissal of the plaintiffs' claims on the merits. See National Home Equity Mortgage Ass'n v. Face, 239 F.3d 633 (4th Cir.2001), Davis v. G N Mortgage Corp., 244 F.Supp.2d 950 (N.D.Ill.2003), and Shinn v. Encore Mortgage Servs., Inc., 96 F.Supp.2d 419, 425-26 (D.N.J.2000). As a result these decisions are readily distinguishable and are not persuasive in the instant context.[4]
*1030 The Court finds the statutory text of the Parity Act lacks the extraordinary preemptive power required to convert a state-law complaint "into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life, 481 U.S. at 65, 107 S.Ct. 1542. The plain language of the Act shows that Congress intended to allow continued state law regulation in significant areas in the field of alternative mortgage transactions, a conclusion which is strengthened by the Office of Thrift Supervision's determination that regulations governing prepayment penalties and late fees which previously applied to state-charted housing creditors no longer apply. "If there is a finding of complete preemption, total occupation by the federal scheme pushes aside any state law claims in the area." 16 James W. Moore, et al., Moore's Federal Practice, § 107.14[4][b][iii] (3rd ed.2003). Thus, it is not likely that Congress intended the Parity Act to completely preempt state law in the field when the Act does not broadly regulate alternative mortgage transactions, and specifically refers to the continuing applicability of various state law regulatory requirements and enforcement mechanisms. As a result, the Court joins with the other courts which have held that Congress in enacting the Parity Act did not intend to completely preempt the area of alternative mortgage transactions.[5]
For these reasons, the Court concludes that the complete preemption doctrine does not apply to the Parity Act to create federal-question removal jurisdiction. Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claim for violation of Missouri law concerning mortgage prepayment penalties. This conclusion would not preclude the parties from litigating in state court about the ordinary preemptive effect, if any, of the Parity Act or regulations promulgated thereunder. See Magee, 135 F.3d at 602.

B. Removal Pursuant to 28 U.S.C. § 1452.
Defendants also removed the case pursuant to 28 U.S.C. § 1452 and assert that this Court has jurisdiction over plaintiffs' claims because it arises under, arises in or is related to a bankruptcy proceeding under Title 11. Defendants assert that plaintiffs commenced a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Missouri in July 2002, and that the claims asserted by plaintiffs arose prior to the bankruptcy filing and as a result are assets belonging to the bankruptcy estate.
Under 28 U.S.C. § 1452(a), "a party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) provides that district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."
Plaintiffs respond that a case may be removed pursuant to 28 U.S.C. §§ 1452(a) and 1334 only if the case is "related to" a bankruptcy, i.e., if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 774 (8th Cir.1995) (citation omitted). Plaintiffs assert *1031 their claims are unrelated to the bankruptcy because (1) claims which arose after their discharge in bankruptcy could not have any conceivable effect on the bankruptcy estate; and (2) although defendant Household Finance was a listed creditor in the bankruptcy, plaintiffs did not discharge their loan in bankruptcy and continued to pay on the loan, and therefore Household has no claim against them. Plaintiffs do "concede for the purpose of argument that there may exist claims which do belong to the bankruptcy estate for damages incurred prior to the" bankruptcy filing. Pls.' Reply Mem. at 2, n. 2.
Plaintiffs further assert that even if this case is "related to" the bankruptcy, the Court must abstain from exercising jurisdiction pursuant to the directives of 28 U.S.C. § 1334(c)(2). This section provides:
Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if any action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
28 U.S.C. § 1334(c)(2). Plaintiffs argue that abstention is required under this section because (1) the case has no independent basis for federal jurisdiction, apart from Section 1334(b), because their claim is premised solely on violation of Mo.Rev.Stat. § 408.036; (2) the claim is a non-core proceeding, because it is related to a case under title 11 but does not arise under or in a case under title 11; (3) the action was originally commenced in state court; and (4) the action could be adjudicated timely in state court.
The Eighth Circuit's test for determining whether a civil proceeding is "related to" a bankruptcy is broad. The Court has instructed that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action ... and which in any way impacts upon the handling and administration of the bankruptcy estate." Specialty Mills, 51 F.3d at 774 (quoting In re Dogpatch U.S.A., Inc., 810 F.2d 782, 786 (8th Cir.1987)). For purposes of this opinion, the Court agrees with defendants that plaintiffs' action is related to their bankruptcy, as any claim for damages which accrued prior to plaintiffs' discharge in bankruptcy may belong to the bankruptcy estate.
The Court agrees with plaintiffs, however, that mandatory abstention is required pursuant to 28 U.S.C. § 1334(c)(2). See In re Titan Energy, Inc., 837 F.2d 325, 333 n. 14 (8th Cir.1988) (listing elements of mandatory abstention under Section 1334(c)(2)). Abstention is required because: (1) plaintiffs timely filed a motion to remand in which they asserted the issue of abstention; (2) this action could not have been commenced in federal court except under Section 1334(b), because no diversity of citizenship exists and the Petition contains an exclusively state-law claim; (3) plaintiffs' claim is a non-core proceeding, as it neither arises in bankruptcy nor involves a right created by federal bankruptcy law, but rather is only related to a bankruptcy;[6] (4) the case was originally commenced in state court, and (5) there is no indication the case cannot *1032 be timely adjudicated in state court following remand. See 28 U.S.C. § 1334(c)(2).
For these reasons, the Court finds that although this case was removable pursuant to 28 U.S.C. § 1452, mandatory abstention is required pursuant to 28 U.S.C. § 1334(c)(2) and plaintiffs' motion to remand should therefore be granted.

IV. Conclusion.

For the foregoing reasons, the Court concludes that the Parity Act does not completely preempt the field of alternative mortgage transactions and therefore does not provide a basis for federal question removal jurisdiction. The Court further concludes that although this case was properly removed pursuant to 28 U.S.C. § 1452, abstention is mandated by 28 U.S.C. § 1334(c)(2). The Court will therefore abstain from this matter and grant plaintiffs' motion to remand.
Accordingly,
IT IS HEREBY ORDERED that the Court abstains from this matter pursuant to 28 U.S.C. § 1334(c)(2).
IT IS FURTHER ORDERED that plaintiffs' Motion to Remand is GRANTED. [Doc. 12]
IT IS FURTHER ORDERED that defendants' Motion to Dismiss and the Chapter 7 Bankruptcy Trustee's Motion to Intervene and for Substitution of Party Plaintiff shall remain pending for resolution by the state court following remand.
An appropriate order of remand will accompany this memorandum and order.
NOTES
[1] There is no allegation that complete diversity of citizenship exists in this case.
[2] The parties did not cite and the Court has not found in independent research any decisions holding that the Parity Act completely preempts the field of alternative mortgage transactions.
[3] In a footnote, the California Court of Appeals stated that regulations have been issued with respect to only four aspects of mortgage financing: late charges, prepayments, adjustments to home loans, and disclosures for variable rate transactions. 12 C.F.R. §§ 560.33-560.35, 560.210, 560.220.
[4] In addition, the cases on which defendants rely were decided prior to the effective date of the Office of Thrift Supervision's repeal of regulations concerning prepayment penalties and late fees with respect to nonfederally chartered housing creditors. See National Home Equity Mortgage Ass'n v. Office of Thrift Supervision, 271 F.Supp.2d 264, 272 n. 7, 275 (D.D.C.2003) (distinguishing Face and Shinn as having been decided under the prior OTS 1996 rule). In National Home Equity, the District of Columbia district court stated that the OTS had determined two regulations previously applicable to state-chartered housing creditors  including those governing prepayment penalties, 12 C.F.R. § 560.33-are no longer applicable to state-chartered housing creditors, and concluded, "As a result, [such creditors] must comply with states' regulations governing these items, rather than the relevant OTS regulations." Id. at 268.
[5] The Court does not address defendants' substantial federal question and "field preemption" points contained in their Notice of Removal, because defendants did not discuss these issues in their memorandum in opposition to plaintiffs' motion to remand. Moreover, neither theory would establish the existence of federal question removal jurisdiction in this case.
[6] The Eighth Circuit defines core proceedings as "those which arise only in bankruptcy or involve a right created by federal bankruptcy law." Specialty Mills, 51 F.3d at 773 (citation omitted). Plaintiffs' claim neither arises in bankruptcy nor involves a right created by federal law.