**In re Raymond MURDOCK,
Jr., Debtor.**

No. 99–33665.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 22, 2005.

Raymond Murdock, Jr., Toledo, OH, pro se.

Anthony DiSalle, Toledo, OH, trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

Before this Court is the Debtor's Motion to Determine Final Balance Due on Claim.

(Doc. No. 47). More than one year following the filing of this Motion, an Evidentiary Hearing was conducted on this matter. (Doc. No. 95). At its conclusion, the Court afforded the Parties the opportunity to file post-hearing briefs outlining their positions on the evidence presented at the Hearing. The Parties have now filed their briefs, and after reviewing the arguments set forth therein, as well as the applicable evidence and law, the Court finds that no balance remains due. Beginning with the factual circumstances surrounding this controversy, the reasons for this decision are now explained.

In June of 1997, the Debtor, Raymond Murdock, Jr., obtained financing in the amount of $42,000.00 for the purchase of a residence, executing a note to that effect, and granting to the note-holder, a purchase money mortgage. Monthly payments under the terms of this mortgage and the note were $608.67 per month, with it being provided that the application of such payments were to be first applied to charges incurred for both advances and interest before any amount was to be applied to principal. The terms also afforded the mortgagee the right to recover any costs incurred for protecting its interest in the event of a default. (Cr. Ex. A & B). The Creditor in this matter, JP Morgan Chase Bank, is by way of an assignment now the holder of both the note and mortgage. (Cr.Ex. C).

In 1998, the Debtor defaulted under the terms of the note and mortgage. Thereafter, the Creditor obtained a judgment in foreclosure in the amount of $40,161.70. This represented the principal balance, plus interest at a rate of 12.25%, together with advances for taxes, insurance and other costs. (Cr. Ex. H, at pg. 3). Before the Creditor was able to execute on its judgment of foreclosure, the Debtor filed a

petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. In his proposed plan of reorganization, as later confirmed by the Court, it was provided that "[s]ecured creditors will retain their liens and will be paid in full." As for payments, the plan went on to provide that the "balance of all funds on hand shall be paid monthly ... over 60 months or less until the entire mortgage balance is paid. In the event a balance remains after 60 months, Debtor shall assume and pay it in full." (Doc. No. 5 & 12).

After confirmation, the Creditor filed its proof of claim, setting forth a balance of $50,210.64, inclusive of an arrearage of $12,307.81, with interest accruing at the note rate of 12.25%. (Cr.Ex. K). Although an objection thereto was filed by the Debtor, it was subsequently withdrawn. (Doc. No. 32 & 39). During the course of the case, the Creditor also filed a § 1305 supplemental proof of claim in the amount $7,519.20 for postpetition advancements it made for unpaid taxes and insurance. (Dr. Ex. No. 1). No objection on the supplemental proof of claim was filed by the Debtor.

On the proofs claims submitted by the Creditor, the Trustee's records show that they have been paid in full, based upon the following disbursements: $50,210.64 paid for principal; $16,143.73 disbursed for the accrual of postpetition interest; and $8,876.00 paid on the Creditor's supplemental proof of claim. (Ex. No. 2). The Creditor disagrees, putting forth that it is still owed $16,203.76. (Doc. No. 101). Pending the outcome of this matter, no order of discharge has yet been entered in this case.

## DISCUSSION

On his Motion to Determine Final Balance Due on Claim, the Debtor asks that the "claim should be deemed paid in full by the Trustee and any mortgage held by the [Creditor] should be released of record." (Doc. 102, Doc. 105). The Creditor requests "that the Court enter an Order finding that amounts are still owing to it." (Doc. No. 101, at pg. 6). On their respective positions, each party cite to and rely on the weight of the evidence presented at the Hearing. Additionally, the Creditor also raised a jurisdictional issue—more appropriately, a lack of jurisdiction by this Court to make any determination regarding its claim. Necessarily, the Court will begin its discussion by addressing this issue, as a proper jurisdictional basis is a fundamental prerequisite for adjudication.

■ In arguing against a valid jurisdictional basis to hear the Debtor's Motion, the Creditor made a number of points to the Court: pendency of the case for more than five years; successful conclusion of the case; and a lack of dispute as to plan interpretation and to how much has been paid. But as to how these points would actually deprive this Court of jurisdiction over the Debtor's claims determination process, the Creditor did not elaborate. The Court could also discern no basis for the Creditor's position.

■ It is a fundamental function of bankruptcy law, and a "core" area of a bankruptcy court's jurisdiction, to make determinations regarding claims against the estate. 28 U.S.C. § 157(b)(2)(B); 11 U.S.C. §§ 501 & 502. And as it regards the Creditor's first two points, neither the completion of the five-year time limitation imposed for making plan payments, nor the successful conclusion of the plan, provide a jurisdictional trip-switch depriving a bankruptcy court of all authority to make determinations regarding a creditor's claim. To the contrary, claims consideration in bankruptcy has no express time

limit; as explained in the case of *United States v. Levoy (In re Levoy)*:

> 11 U.S.C. § 502(j) provides that a claim that has been allowed or disallowed may be reconsidered for cause. Fed. R.Bankr.P. 3008 provides the means for seeking reconsideration of an order allowing or disallowing a claim. It provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." The court after a hearing on notice shall enter an appropriate order. There is no time limit for bringing a Rule 3008 motion.

182 B.R. 827, 831–32 (9th Cir. BAP 1995).

As to the Creditor's other two jurisdictional arguments—regarding no issues as to plan interpretation and the amounts paid to the Trustee—even if one were to assume that such matters would deprive this Court of jurisdiction, a position which is itself highly questionable, they lose focus of what is at issue. The focus of the Debtor's position does not involve the interpretation of the plan's language or the amounts paid by the Trustee on the Creditor's claim. Rather, the Debtor is seeking resolution of just one issue: the amount, if any, remaining due on the Creditor's claim. And again, with the claims allowance process being at the center of a bankruptcy court's jurisdiction, it is difficult to surmise how there is lacking a jurisdictional basis for this Court to make such a determination. *See Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (when a creditor files a claim in bankruptcy, it triggers the process of claims allowance, thereby subjecting *itself* to the bankruptcy court's summary jurisdiction). Accordingly, with the Creditor's argument as to the lack of jurisdiction lacking any discernable merit, the second matter, and the one which forms the central basis of the Parties' dispute, comes to the forefront: determining the amount, if any, still due and owing to the Creditor.

With regards to the current balance of the Creditor's claim, the Parties do not disagree that the Trustee has made disbursements to the Creditor in the amount of $66,354.37 on its first proof of claim and $8,876.00 on its supplemental proof of claim. Nor, as exemplified by the Creditor's allowed proofs of claim, do the Parties disagree that the Creditor, under the terms of its note and security interest in the Debtor's residence, held a valid secured claim at the commencement of this case in the amount of $50,210.64. Rather, the Parties' point of contention focuses on the proper application of those payments received by the Creditor to this claim.

Unlike a traditional mortgage, where payments are applied to both interest and principal, the terms of the Parties' agreement provided that payments were to be applied first to accruing interest, and then only to principal to the extent that the Debtor's payments were in excess of the amount of interest due. It is then on this basis by which the Creditor puts forth that the Trustee improperly applied those payments made by the Debtor. That is, the Trustee improperly credited payments made by the Debtor to both principal and interest, instead of first to just interest, thereby resulting in a quicker diminution of the mortgage balance than otherwise allowed under its terms.

 As an evidentiary matter, those proofs of claim submitted by the Creditor, having been properly filed, are afforded a presumption of validity; Bankruptcy Rule 3001(f) sets forth: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." It is thus the Debtor's burden to put forth evidence which is sufficient to refute the *prima facie* presumption of validity afford-

ed to the Creditor's proofs of claim. However, like with other debts, the ultimate burden of proof remains on the claimant to establish the validity of its claim by at least a preponderance of the evidence. FED.R.BANKR.P. 3001(f); *In re Durastone Co.*, 223 B.R. 396, 397–98 (Bankr.D.R.I. 1998).

When put to his initial burden, an underlying theme of the Debtor's position may be posited as this simple question: disregarding the supplemental proof of claim, whose propriety has not been placed in controversy, how can $16,203.76 still be owing to the Creditor for a 1998 judgment entered in the amount of $40,161.70, when from May 2000 to March 2005, the Creditor received over $66,000.00 in payments? (Doc. No. 102). And to be sure, any neutral observer looking at this balance sheet would not be struck with the feeling of balanced and fair; over a seven-year period the Debtor is being asked to pay more in interest than in principal. However, by itself, the appearance of inequities between principal loaned and principal paid is insufficient to justify a finding that the Debtor has sustained his burden.

■ In a Chapter 13 bankruptcy, a debtor is not permitted to "modify the rights of holders of secured claims" when that claim is "secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1322(b)(2). "Rights" under § 1322(b)(2) commonly denote legally enforceable contractual obligations, such as those represented here by the Parties' mortgage and note, thus entitling the Creditor to the full benefit of its bargain. *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). This is contrary to other forms of collateral where modification of the secured creditor's rights is permissible.

However, while the anti-modification clause of § 1322(b)(2) allows the Creditor to be compensated in the interest-first manner as provided in the Parties' contractual relationship, it still presupposes that the Creditor properly applied the payments. This, however, is premature because at the Hearing held in this matter, the Creditor's representative admitted that accounting errors existed with the Debtor's account, with payments being improperly allocated. To this end, the evidence shows that the Creditor's payment history for the Debtor is out-of-alignment, reflecting at times a complete disjuncture when set against those periodic payments made by the Trustee. As but one example, the Creditor's records reflect a one-time, very large reduction in principal, with no corresponding payment being made by the Trustee. Also unexplained, and giving the appearance of impropriety, it was shown that the Creditor simultaneously ran two separate accounts for the Debtor.

Yet, despite such accounting discrepancies, the Creditor argues there still exists "ample evidence from its business records and testimony to demonstrate that there is still money owing on the loan." (Doc. No. 101, at pg. 6). Thus, the Creditor asked that this Court make its own determination as to the balance owed by the Debtor on its account. In making this request, the Creditor pointed out that its original proof of claim "was not a payoff proof of claim." (Doc. No. 101, at pg. 5).

■ As requested by the Creditor, a bankruptcy court is empowered to make its own independent determination regarding the amount due on a claim. *In re Wines*, 239 B.R. 703 (Bankr.D.N.J.1999) (performing calculations). But at this point, the burden shifts to the Creditor to establish what amount(s) may remain due and owing on its proofs of claims. The

account discrepancies made by the Creditor, when set in the same light as those relatively large payments previously made by the Debtor, sufficiently rebut the *prima facie* validity afforded to the Creditors' proofs of claim.

The Creditor's primary source of documentary evidence to support its burden is a payoff statement which reflected that it is still owed $16,203.76. (Cr.Ex. EE). But even disregarding the self-serving nature of this document, the Creditor, beyond pointing to the interest-first structure of its mortgage/note, was unable to explain or otherwise demonstrate with any degree of certainty as to how it obtained this figure. Instead, the Creditor merely placed before the Court pages of enigmatic account statements, from which this Court is expected to divine a number. (Ex. D). The Court, however, must decline this invitation.

First, and foremost, it is well established that "it is not this court's obligation to sift through evidence to find support for a litigant's position." *In re BAJ Corp.*, 42 B.R. 595, 597 (Bankr.D.Conn. 1984). A litigant must instead point the Court to the specific reasons for its position, otherwise the Court would be simply making up number. Second, as with any evidentiary matter concerning the liquidation of a claim, the amount of such claim must be able to be ascertained with reasonable certainty; pure speculation and guesswork are not permissible. Yet, without the benefit of a credible explanation, speculation and guesswork is all this Court would be engaging in if it were to fix an amount owed by the Debtor.

Therefore, in conclusion, with the Debtor having put forth sufficient evidence to rebut the accuracy of the Creditor's proofs of claims, and with the Creditor unable to carry its burden of liquidating the amount of its claims, it is the finding of this Court that the Creditor's claims have been fully satisfied. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that those proofs of claims, whose rights thereunder are held by the Creditor, JP Morgan Chase Bank through assignment, are hereby deemed to be paid in full by the Trustee.