**In re Donald Edward MOFFITT, and Phyllis Joy Moffitt, Debtors**

**Donald Edward Moffitt, and Phyllis Joy Moffitt, Plaintiffs**

v.

**America's Servicing Company, Defendant.**

**Bankruptcy No. 3:04–bk–22708 E. Adversary No. 3:07–ap–01054.**

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

May 21, 2009.

Debra J. Reece, Reece Law Firm, PLLC, Little Rock, AR, Joel G. Hargis, Crawley & DeLoache, PLLC, Jonesboro, AR, for Plaintiffs.

Blair B. Evans, Baker, Donelson, Bearman, Caldwell & Ber, Memphis, TN, for Defendant.

### ORDER GRANTING MOTION TO DISMISS IN PART

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the *Motion to Dismiss Amended Complaint Seeking*

---

Damages in Core Adversary Proceeding and brief in support filed by America's Servicing Company and Wells Fargo Bank, N.A. ("**ASC**") on July 29, 2008 (the "**Motion to Dismiss**"). ASC filed a *Supplemental Motion to Dismiss Amended Complaint Seeking Damages in Core Adversary Proceeding* on August 22, 2008 (the "**Supplemental Motion to Dismiss**"). Plaintiffs/Debtors (the "**Moffitts**") filed a response and brief on September 22, 2008, and ASC filed its reply and brief on November 5, 2008. The Court heard oral argument on November 12, 2008, and took the matter under advisement.

### BACKGROUND

The Moffitts received a Chapter 13 discharge on April 6, 2006. Prior to the entry of discharge, the Court entered an Order approving ASC's claim in the total amount of $14,409.13 ("**Order Approving Claim**") and directing the Moffitts to begin making their monthly mortgage payments directly to ASC (which they did). The same day, the Moffitts paid ASC an additional $10,000 with written directions that this sum be applied to the principal on their loan. Around the same time, the Chapter 13 Trustee (the "**Trustee**") made final disbursements to ASC totaling $9,581.57 (in accordance with the Order Approving Claim) [1] which should have brought the Moffitts' home loan current (paying all allowed fees and costs and catching up prior mortgage payments). Instead of bringing the balance current with the Trustee's final disbursement, applying the additional $10,000 to principal, and applying the regular monthly mortgage payments to principal, interest, and escrow as they were paid, ASC misapplied

---

1. In accordance with the *Trustee's Final Report and Account,* a total of $14,409.13 was paid on ASC's claim, which included the final disbursement of $9,581.57.

all of these payments, failed to record the correct information despite frequent phone calls and written instructions from Mrs. Moffitt, failed to communicate with the Moffitts, sent mortgage statements that were incomprehensible and frightening, began making collection calls, and engaged in gross mismanagement of the Moffitts' loan. As a result, the Moffitts reopened their bankruptcy case and filed this lawsuit against ASC on February 28, 2007. Several months after the Moffitts filed this lawsuit, ASC renewed collection attempts, and on December 21, 2007, the Moffitts filed a *Motion for Temporary Injunction and Restraining Order* (the "**TRO Motion**") alleging that ASC, through a letter, phone messages, and mortgage statements, was attempting to collect late charges and arrearages that the Moffitts did not owe. The TRO Motion asked the Court to enjoin ASC from contacting the Moffitts until a trial on the merits of the Moffitts' Complaint could be held and decided. ASC would not agree to stop its collection efforts, and as a consequence, this Court held a day long injunction hearing on January 14, 2008. The Court granted the injunction directing ASC to stop its collection efforts, and subsequently entered a Memorandum Opinion detailing its findings of fact and conclusions of law on June 18, 2008. *See Moffitt v. America's Servicing Company (In re Moffitt)*, 390 B.R. 368 (Bankr.E.D.Ark.2008).

After considering the *Motion to Approve Plaintiffs' Attorney Fees and Costs* filed by the Moffitts, ASC's response, and the Moffitts' reply and brief in support, the Court entered an *Order Approving Award of Attorneys' Fees and Costs* (the "**Fee Order**") awarding the Moffitts $13,010.72 in attorneys' fees and costs in connection with the TRO Motion and hearing on June 27, 2008. ASC had objected to some of the fees requested as not being reasonable, but did not object to the overall award of

fees and costs. ASC immediately sought leave to appeal the Court's award of attorney fees on the grounds that the Court did not have the authority to award fees and costs, and also raising for the first time, the issue of whether the Court had subject matter jurisdiction. On July 15, 2008, the Bankruptcy Appellate Panel for the Eighth Circuit Court of Appeals denied ASC's motion to file an interlocutory appeal of the Fee Order. On July 29, 2008, ASC filed its Motion to Dismiss, and on August 22, 2008, ASC filed its Supplemental Motion to Dismiss.

## ASC'S MOTION TO DISMISS

ASC moves to dismiss claims one through six of the Moffitts' complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(1) and (6) and Fed. R. Bankr.P. 7012. ASC moves to dismiss claims seven through twelve of the Moffitts' complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and Fed. R. Bankr.P. 7012. This Order examines only the issue of jurisdiction. The Court finds that it does have subject matter jurisdiction over claims one through six, but does not have subject matter jurisdiction over claims seven through twelve. ASC argues that even if the Court has subject matter jurisdiction for claims one through six, these claims fail to state a claim upon which relief may be granted under Fed. R.Civ.P. 12(b)(6). The Rule 12(b)(6) issues will be addressed in a separate order.

The parties' arguments are set forth in detail below along with the applicable law and the Court's decisions. The facts relevant to the case were set forth in this Court's Memorandum Opinion dated June 18, 2008, and will be restated here only to the extent necessary. Any addi-

tional facts included in this Order are taken from the Court's docket and the record in this adversary proceeding.[2]

## LEGAL STANDARD

■■■■ "Courts are obligated to examine their own jurisdiction and subject matter jurisdiction may be raised at any time, by a party or the court, *sua sponte.*" *May v. Missouri Dep't of Revenue (In re May),* 251 B.R. 714, 719 (8th Cir. BAP 2000).

> Federal courts are courts of limited jurisdiction and that limited jurisdiction is conferred only by statute or by the United States Constitution. [*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982).] As a result of this statutory and Constitutional restraint on federal power, parties themselves cannot confer subject matter jurisdiction, their consent to such jurisdiction is irrelevant, they cannot waive the requirement by failing to challenge jurisdiction.

*In re Fitzgeralds Gaming Corp.,* 261 B.R. 1, 5 (Bankr.W.D.Mo.2001). Accordingly, ASC's failure to object to jurisdiction earlier in the case, or its admitting to the Court's jurisdiction in its initial Answer does not relieve this Court of its duty to examine whether or not it has subject matter jurisdiction.

■■■ Pursuant to 28 U.S.C. § 1334, federal district courts have original and exclusive jurisdiction over all cases under title 11 (*i.e.,* the Bankruptcy Code), and original but not exclusive jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." Proceedings under the Bankruptcy Code may be automatically referred to the bankruptcy judges for the district by the district court. 28 U.S.C. § 157(a). The Eastern District of Arkansas's Local Rule 83.1 provides for automatic referral of "[a]ll cases and proceedings arising under Title 11 of the United States Code or arising in or related to a case under Title 11, brought pursuant to 28 U.S.C. § 1334, § 1412, or § 1452, except personal injury or wrongful death tort claims, ...". Thus, a Bankruptcy Court's jurisdiction is strictly limited to proceedings that "arise under," "arise in," or are "related to" a bankruptcy case. Supplemental jurisdiction under 28 U.S.C. § 1367 does not extend to bankruptcy courts. As explained by the District Court for the Eastern District of Louisiana in *In re Walker:*

> '[r]elated to' jurisdiction already allows the bankruptcy court to hear, to the extent Congress intended, all supplemental claims that have a conceivable effect on the bankruptcy. It seems counterintuitive, then, that Congress, having given bankruptcy courts only limited judicial power over 'non-core' or 'related to' proceedings, would have intended for bankruptcy courts to nevertheless look to 28 U.S.C. § 1367 as an additional or expanded basis of jurisdiction.

168 B.R. 114, 120 (E.D.La.1994). *See also In re Remington Development Group, Inc.,* 180 B.R. 365, 373 (Bankr.D.R.I.1995) ("The § 157(a) reference is the vessel

---

2. ASC has asked the Court to take judicial notice as permitted by Fed.R.Evid. 201 of all pleadings, claims, and loan documents of record in the Moffitts' bankruptcy case. "Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss." *State ex rel. Nixon v.*

*Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir.1999) (citing *Papasan v. Allain,* 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Hollis v. United States Dep't of Army,* 856 F.2d 1541, 1543–44 (D.C.Cir.1988)). Accordingly, the Court takes judicial notice of the docket in this case and the record previously made in this adversary proceeding.

through which jurisdiction may be passed to the bankruptcy courts. Congress constructed that vessel with precise dimensions and limited capacity. Supplemental jurisdiction will not fit within it.").

## ANALYSIS

### Claims One Through Six

■ Claims one through six are based on provisions of the bankruptcy code, and therefore fall within the Court's "arising under" jurisdiction. Numerous courts have held that the bankruptcy court retains jurisdiction over core proceedings such as claims determinations[3] or violations of the discharge injunction under § 524 even after a case is closed. *See e.g., In re Mahoney,* 368 B.R. 579, 582 (Bankr. W.D.Tex.2007) ("The Court has the inherent power to enforce its own injunctions. Jurisdiction over the alleged violation of the discharge injunction is therefore proper.") (citing *In re Gervin,* 337 B.R. 854, 857 (Bankr.W.D.Tex.2005)); *In re Padilla,* 365 B.R. 492, 503 (Bankr.E.D.Pa.2007) ("The existence of bankruptcy court jurisdiction

to resolve disputes arising under § 524(i) is manifest.") (citing 28 U.S.C. § 1334(b) (providing for jurisdiction in proceedings "arising under title 11" or "arising in" cases under title 11)); *In re Murdock,* 337 B.R. 308, 310 –311 (Bankr.N.D.Ohio 2005) ("And as it regards the Creditor's first two points, neither the completion of the five-year time limitation imposed for making plan payments, nor the successful conclusion of the plan, provide a jurisdictional trip-switch depriving a bankruptcy court of all authority to make determinations regarding a creditor's claim."); *In re Vogt* 257 B.R. 65, 69 (Bankr.D.Colo.2000) (Court exercised jurisdiction over § 524 claim after discharge entered and case closed); *McGlynn v. Credit Store, Inc.,* 234 B.R. 576, 584 (D.R.I.1999) ("Therefore, because the plaintiff can prevail on its bankruptcy and conspiracy claims against defendants only if it is determined that § 524 of the Bankruptcy Code was violated, they are claims that 'arise under' Title 11 and should be transferred to the Bankruptcy Court.").[4]

---

**3.** The Court also finds it significant that a prior version of 11 U.S.C. § 502(j) specifically stated, "[b]efore a case is closed, a claim that has been allowed may be reconsidered for cause . . . .", and in 1984, Congress redrafted § 502(j) to exclude the "[b]efore a case is closed" limitation. Section 502(j) has since been interpreted to allow reconsideration of a claim after a case has been closed and reopened. *See In re International Yacht and Tennis, Inc.,* 922 F.2d 659, 662 (11th Cir. 1991) ("The effect of this change most likely is to permit reconsideration of claims once a case is reopened.") (citing Collier *Bankruptcy* ¶ 502.10, 502–106 (15th ed.1979, Rel. 24–11/87 Pub. 219); Advisory Committee Note to Bankruptcy Rule 3008 (1983); *In re Associated Air Services,* 100 B.R. 106, 107 (S.D.Fla. 1988) (no clear time limit for motions for reconsideration); *In re Turchon,* 62 B.R. 461, 464 n. 3 (Bankr.E.D.N.Y.1986) (motion for reconsideration may be made upon reopening of case)). *See also In re Adkins,* 425 F.3d 296, 308 (6th Cir.2005) ("Reconsideration under

§ 502(j) can occur even after a plan is confirmed."); *United States v. Levoy (In re Levoy),* 182 B.R. 827, 831–32 (9th Cir. BAP 1995) (holding that claims consideration in bankruptcy has no express time limit).

**4.** *See also In re Singleton,* 269 B.R. 270, 277 (Bankr.D.R.I.2001); *In re Grabinski,* 150 B.R. 427, 432 (Bankr.N.D.Ill.1993). The *Singleton* court stated,

Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. [§ ] 524(b), the existence of prohibited post-bankruptcy discrimination, proposed section 525, the validity of securities issued under a reorganization plan, and so on. The bankruptcy court will be able to hear these proceedings because they arise under title 11. H. Rep. No. 95–595, at 445 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963. With such extensive and uniform authority in support of the proposition, I also conclude that "[t]he Bankruptcy Code

In claims one through six, the Moffitts challenge certain fees paid to ASC through their estate by way of actions under § 502(j), § 506(b), and Bankruptcy Rule 2016. The Moffitts also assert claims against ASC for violation of the discharge injunction under § 524 and for violation of the automatic stay under § 362. This Court has jurisdiction over these claims as they arise under the bankruptcy code and involve an amount that was paid through a bankruptcy plan. Accordingly, the Court denies ASC's Motion to Dismiss for lack of subject matter jurisdiction with respect to claims one through six. A separate order deciding whether claims one through six should be dismissed for failure to state a claim upon which relief may be granted will be entered at a later date.

### Claims Seven Through Twelve

■ Claims seven through twelve of the Moffitts' Amended Complaint are based on either federal (but not bankruptcy) or state law. Accordingly, none of these causes of action were created by or based on a provision of the Bankruptcy Code, thereby "arising under" title 11, and none of these causes of action are dependent on the bankruptcy case's existence, thereby "arising in" a case under title 11. Accordingly, the Court could only have "related to" jurisdiction over these causes of action. The Eighth Circuit Court of Appeals has set forth the following test for determining whether a case is "related to" a case under title 11:

> "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy * * *.* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action * * * and which in any way impacts upon the handling and administration of the bankrupt estate."

*Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.),* 810 F.2d 782, 786 (8th Cir.1987) (*quoting Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original)).[5] *See also Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773–774 (8th Cir.1995).

■ ASC argues that the Court does not have "related to" jurisdiction over claims seven through twelve because on February 28, 2007, when the Moffitts filed this complaint, they had already completed their Chapter 13 plan, they had received their discharge in April of 2006, and their bankruptcy case had closed in June of 2006. The Moffitts argue that claims seven through twelve have a sufficient "nexus" to their Chapter 13 bankruptcy case to warrant this Court's exercise of jurisdiction, and that the Court should retain jurisdiction over these claims. The Court acknowledges that it has an in depth knowledge of the facts concerning claims seven through twelve, and further recognizes that the costs to the parties of trying claims seven through twelve in another court, not to mention the time another court will have to invest in comprehending these facts and deciding the causes of action will be significant. But despite the logic and economy of this Court deciding claims seven through twelve, Eighth Circuit law limits "related to" jurisdiction to

contemplates that various activities may occur after closing" and that the Court retains jurisdiction to adjudicate matters arising under title 11, even after the case is closed (and presumably, while the case remains closed).

269 B.R. at 277 (citing *In re Menk,* 241 B.R. 896, 911 (9th Cir. BAP 1999)).

**5.** *Pacor* was overruled on other grounds by *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).

whether a cause of action **could conceivably affect the administration of the bankruptcy estate.** *See Dogpatch,* 810 F.2d 782, *Specialty Mills,* 51 F.3d 770, *infra.* While the Eighth Circuit as well as some courts within the Eighth Circuit have mentioned a "nexus" to the underlying bankruptcy case in determining whether subject matter jurisdiction exists, these courts went on to apply the test of whether there is also an effect on the estate. *See e.g., Specialty Mills,* 51 F.3d at 774 ("For subject matter jurisdiction to exist in a 'related to' action, there must be some nexus between the civil proceeding and the Title 11 case.... We have stated that for courts to assert jurisdiction over a proceeding 'related to' a bankruptcy case, the proceeding must 'have some effect on the administration of the debtor's estate.' "). Further, courts within the Eighth Circuit have consistently held that common issues of fact and concerns regarding judicial economy are insufficient to bring a case within the bankruptcy court's subject matter jurisdiction. *See In re American Energy Trading, Inc.,* 291 B.R. 159, 168 (Bankr.W.D.Mo.2003) ("Further, the [*Pacor* ] court cautioned that '[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]. Judicial economy does not justify federal jurisdiction.' ") (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). *See also In re Farmland Industries, Inc.,* 378 B.R. 829 (8th Cir. BAP 2007) (same). Finally, the *McAlpin* case, cited by ASC, provides controlling

precedent in this situation. There, the Eighth Circuit held:

> We agree that the bankruptcy court did not have jurisdiction in the claim-objection proceeding under 28 U.S.C. §§ 157(b) or (c) (establishing core and non-core bankruptcy court jurisdiction), because (1) Mr. McAlpin's challenge to the propriety of the claimed collection costs came after his discharge, so the claim could no longer have been against the estate, and thus did not involve a right created by bankruptcy law or arising only in bankruptcy, *see Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773 (8th Cir.1995) (core proceedings); and (2) the claim-objection proceeding was not related to the bankruptcy, because at the time Mr. McAlpin objected to the claim there was no longer a plan to be confirmed, or an estate, and therefore the proceeding could not conceivably have affected his estate, *see id.* at 773–74 (non-core proceedings must have "conceivable effect" on administration of debtor's estate); *In re Fairfield Cmtys., Inc.,* 142 F.3d 1093, 1095 (8th Cir.1998) (once bankruptcy debtor's reorganization plan has been confirmed, debtor's estate, and thus bankruptcy court's jurisdiction, ceases to exist; bankruptcy court is not meant to protect parties with regard to post-confirmation matters).[6]

*In re McAlpin,* 278 F.3d 866, 868 (8th Cir.2002). In *McAlpin,* the Eighth Circuit made clear that where there is no bankruptcy estate remaining, there can be no "related to" jurisdiction.[7] Accordingly,

---

**6.** *Fairfield* was a Chapter 11 case. Courts routinely find they still have jurisdiction after confirmation of a Chapter 13 case. *See e.g., In re Watson,* 384 B.R. 697, 706 (Bankr.D.Del. 2008) ("The Court, however, still has jurisdiction over a Chapter 13 case after confirmation occurs.") (citing *Jones v. Wells Fargo Home*

*Mortgage (In re Jones),* 366 B.R. 584, 595 (Bankr.E.D.La.2007); *In re Sanchez,* 372 B.R. 289, 306 (Bankr.S.D.Tex.2007)).

**7.** Although ASC urges the Court to interpret *McAlpin* as standing for the proposition that a bankruptcy court loses its "arising under"

claims seven through twelve of the Moffitts' Amended Complaint must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED** that ASC's Motion to Dismiss claims one through six will remain under advisement, and the Court will subsequently enter an Order detailing its decision on whether those claims adequately state a claim for relief under Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that claims seven through twelve of the Moffitts' Amended Complaint are hereby **DISMISSED** for lack of subject matter jurisdiction without prejudice to the right of the Plaintiffs to assert those claims in another court of competent jurisdiction.

**IT IS SO ORDERED.**

and "arising in" jurisdiction once the bankruptcy estate is no longer in existence, this argument is flawed. Without question, the bankruptcy court has jurisdiction when a cause of action "arises in" a bankruptcy case, or "arises under" the bankruptcy code. Existence of a bankruptcy estate is critical when the court is determining whether it has "related to" jurisdiction. While the *McAlpin* court found that the bankruptcy court had no postdischarge jurisdiction over a claims proceeding, which is normally a core proceeding arising under the Bankruptcy Code, the facts of *McAlpin* are distinguishable from this case. In *McAlpin*, the creditor's claim and the debtor's objection to that claim were of no consequence to the debtor's bankruptcy case because the plan had not paid, and would not pay, anything on the claim. Specifically, the claim at issue in *McAlpin* was **never** against the estate. In this case, the Moffitts seek to undo something that did happen in their case—specifically, they seek to revisit the amount that was paid to ASC by their estate at the close of their case and to remedy alleged violations of § 524 and § 362.